**DEVCON CORPORATION, Plaintiff-Appellee,**

v.

**WOODHILL CHEMICAL SALES CORPORATION et al., Defendants-Appellants.**

**No. 72–1011.**

United States Court of Appeals, First Circuit.

Jan. 20, 1972.

Supplemental Opinion March 20, 1972.

H. D. Cooper, Cleveland, Ohio, with whom Howard L. Weinshenker, Yount, Tarolli, Weinshenker & Cooper, Cleveland, Ohio, Stanley Sacks, and Wolf, Greenfield & Sacks, Boston, Mass., were on petition for stay and memorandum in support thereof.

Douglas E. Whitney, Boston, Mass., with whom Russell & Nields, Boston, Mass., was on memorandum in opposition to appellant's petition for stay; George L. Greenfield, Boston, Mass., Yount, Tarolli, Weinshenker & Cooper, Cleveland, Ohio, and Wolf, Greenfield & Sacks, Boston, Mass., were on brief, for appellants.

Richard S. Koppel, and David H. Halpert, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

PER CURIAM.

We have before us a motion to stay, pending appeal, a preliminary injunction granted against asserted trademark infringement. Except to say that it raises grave doubts, we will reserve until a later date discussing a procedure under which the only hearing given the defendant on such an important matter was before a magistrate. The magistrate wrote an opinion in which he found that there is a great likelihood of consumer confusion between the products of the plaintiff and defendant; that plaintiff's mark is not descriptive but suggestive, and that plaintiff would suffer irreparable harm, without immediate relief, because its mark could be destroyed. If typewriting is a guide, the magistrate prepared the broad injunction for the district judge to sign. This he did without notice or opportunity to be heard.

Both parties make an epoxy glue of, so far as appears, substantially identical use characteristics. Its attraction is two-fold—great strength, and fast setting. The exact setting time depends upon the temperature, but it appears that at normal room temperature the time is approximately five minutes. Plaintiff received a registered trademark "5 MINUTE," which it uses in connection with the word Epoxy. De-

fendant calls its product "E–POX–E 5" and adds on its retail cards to which the individual tubes are attached, in considerably smaller print, "Five Minute Glue."

According to the magistrate's findings, in 1967 plaintiff "was successful in developing a glue which sets in five minutes," and was the only manufacturer of "epoxy which sets in five minutes" for three years. Plaintiff's president testified by *deposition* that he called his product "5 Minute" epoxy because "[w]e're trying to give the customer an idea that it sets up in about five minutes' time." He testified that his product "hardens," "does set up" and "sets" in "about five minutes." On the back of plaintiff's package is the notation that the product "will harden in approximately five minutes." We are at a loss to understand the magistrate's conclusion of non-descriptive in the light of this evidence. If the product does not, in fact, set in the advertised five minutes, the mark would appear to be misdescriptive. Either is normally forbidden. 15 U.S.C. § 1052(e).* The case seems the reverse of plaintiff's case of In re One Minute Washer Co., (Ct. of Cust. & Pat.App., 1938) 95 F.2d 517.

We are deeply troubled to think that a party can seize upon one of the primary characteristics that make an unpatented commercial product marketable and preempt or limit competitor reference by registering it as a trademark. The thrust of plaintiff's position is illustrated by its counsel's response to our question. He "personally" (the word was his) thought it was all right if defendant said in small letters on the back of the card that its glue sets in five minutes, so long as it did not say so in large letters on the front.

Plaintiff concedes that its only claim for irreparable damage is the possibility that, pendente lite, its mark could be destroyed. We realize that there are famous instances of destruction by general use. *See, e. g.,* Bayer Co. v. United Drug Co., S.D.N.Y., 1921, 272 F. 505. *See also* DuPont Cellophane Co. v. Waxed Products Co., 2 Cir., 1936, 85 F. 2d 75, cert. denied 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443. Plaintiff offers no case suggesting that this could occur during the relatively short interval in which a case was being tried. In explanation, plaintiff says that the case at bar is "sui generis." If this be so it could only be because plaintiff wants its product to be the only one known as setting in five minutes—precisely what we doubt its right to.

Defendant has fully met its burden. The court orders the stay of the preliminary injunction granted at the hearing before the single judge continued until disposition of the appeal.

## Supplemental Opinion

ALDRICH, Chief Judge.

The facts in this case were briefly noted in our previous opinion under date of January 20, 1972, to which this is supplementary. After further briefing and argument we see no more likelihood of plaintiff's success today than we did then. Although plaintiff wishes to be considered as thinking of "5 Minute" merely as suggestive of speed and not specifically descriptive, its own witnesses testified that their initial intent was —as was defendant's—to find an epoxy glue that set in five minutes. When originally developed, epoxies were slow in setting, which, as plaintiff admits, "limited their utility in certain areas, such as model-building, where many adhesive joints had to be made seriatim." Because of this, a five minute set was highly attractive, as plaintiff's great commercial success itself manifested.

This is hard evidence and not speculation. We are not impressed with plaintiff's rejoinder:

"There being no evidence reaching the state-of-mind of the average consumer,

---

* Understandably, the magistrate did not make the finding that plaintiff appeared to have satisfied the heavy burden of showing itself within section 1052(f).

there is nothing to rebut the magistrate's conclusion that the average consumer would see a *suggestion* but not a description." (Emphasis in orig.)*

■ Plaintiff overlooks a second fact, that even after its supplier developed a five minute set, a demand remained for longer setting periods, for other uses. Hence the length of the set would be uppermost in the mind of a purchaser who was making a choice. Having no right to exclude others from selling epoxies having its particular set characteristic, plaintiff may not handicap its competitors by compelling them to water down their own announcement so that plaintiff may seem to be the only one who fills the bill. *See* Bennett v. McKinley, ante note at 506. *See also* Esquire Inc. v. Esquire Slipper Mfg. Co., 1 Cir., 1957, 243 F.2d 540, 543. Nor can it pick a mark that would make a general request by a buyer for a five minute epoxy seem like a specific request for plaintiff's product. *See* Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 116–117, 59 S.Ct. 109, 83 L.Ed. 73.

Plaintiff's final argument, that intentional copying of a descriptive phrase raises a presumption that the phrase had acquired a secondary meaning, is pure bootstrap.

The preliminary injunction issued by the district court is vacated.

---

* We do not think this is an accurate interpretation of what the magistrate concluded. He said,

"On the other hand, the average consumer seeing the phrase '5 Minute' would immediately assume that the manufacturer of the product is suggesting that the product will do a particular thing in that amount of time."

We read this as meaning that what was suggested was a particular process (viz., setting) not that the length of time was merely suggestive. *Cf.* Bennett v. McKinley, 2 Cir., 1895, 65 F. 505 ("Instantaneous Tapioca"). Quite clearly, as plaintiff conceded during oral argument, if defendant, knowing that it took its product seven minutes to set, advertised it as "5 minute," plaintiff would make a claim for unfair competition quite apart from trademark infringement.

Our discussion of the magistrate's resolution of the evidence is without prejudice to the broad issue of its propriety, which we do not reach. We decide this case on the conceded facts, and our own conclusion as to the probability of plaintiff's success.