**TRAK INCORPORATED, Plaintiff,**

v.

**BENNER SKI KG and Bavarian Ski Co., Inc., Defendants.**

Civ. A. No. 79–662–G.

United States District Court,
D. Massachusetts.

Sept. 5, 1979.

Frank P. Porcelli, Fish & Richardson, Boston, Mass., for plaintiff.

Arthur Z. Bookstein, Wolf, Greenfield & Sacks, P. C., Boston, Mass., for defendants.

## MEMORANDUM OF DECISION ON MOTION FOR PRELIMINARY INJUNCTION

GARRITY, District Judge.

This is a suit for relief from alleged trademark infringement and unfair competition. Plaintiff Trak Incorporated ("Trak") owns a trademark "fishscale" reg- istered on the Principal Register under 15 U.S.C. § 1051 and used in association with certain waxless cross-country skis. Defend- ant Benner Ski Kg ("Benner"), a German- based ski manufacturer, uses the mark "fishstep" on some of its cross-country skis; Benner does not hold a United States regis- tered trademark covering "fishstep", al- though the mark is registered in Germany and Benner's United States application, filed on March 2, 1979, is pending. Defend- ant Bavarian Ski Co., Inc. ("Bavarian") is a United States wholesale seller of cross- country skis, including Benner's skis.

Plaintiff's claims for injunctive relief and damages are based on 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a), the Massachusetts Anti- Dilution statute, M.G.L. c. 110B, § 12, and the common law of unfair competition. De- fendant Bavarian has counterclaimed under 15 U.S.C. § 1119 for cancellation of plain- tiff's trademark registration, under 15 U.S.C. § 1120 for damages due to fraudu- lent registration and under the common law of unfair competition for injunctive relief and damages. Plaintiff brought a Motion for Temporary Restraining Order and Pre- liminary Injunction, which the parties have treated as for a preliminary injunction. Defendant Benner then moved to dismiss for lack of personal jurisdiction. At a hear- ing held on June 28, 1979, we denied the motion to dismiss and heard oral argument on plaintiff's motion. Before and after the hearing, both parties filed extensive briefs and numerous affidavits. Upon considera- tion of all supporting and opposing materi- al, plaintiff's motion for a preliminary in- junction is granted.

The standards for granting prelimi- nary relief in the First Circuit are clear. Plaintiff must satisfy four requirements: (1) that there is a probability of success on the merits, (2) that it will suffer irreparable harm without injunctive relief *pendente lite,* (3) that the harm it will suffer if an injunction is not granted outweighs the harm the defendant will suffer if re- strained, and (4) that granting injunctive relief is consistent with the public interest. *Automatic Radio Mfg. Co. v. Ford Motor*

*Co.,* 1 Cir. 1968, 390 F.2d 113. The controversy in the instant case centers on the likelihood of success on the merits. There can be little dispute about the other three standards. Assuming defendants are unlawfully infringing plaintiff's trademark, irreparable harm follows from the injury to the goodwill and reputation plaintiff has developed in its mark. *Pic Design Corp. v. Bearings Specialty Co.,* D.Mass.1970, 317 F.Supp. 326, 328, *aff'd* 1 Cir. 1971, 436 F.2d 804. Plaintiff has shown, both in the affidavits it has submitted and by comparative test results, that negative scale skis such as those manufactured by Benner under the "fishstep" mark do not perform as well as Trak's positive scale skis. Even if the two skis functioned equally well, there would still be possible loss of sales difficult to estimate and other non-monetizable results of consumer confusion. *Omega Importing Corp. v. Petri-Kino Camera Company,* 2 Cir. 1971, 451 F.2d 1190, 1195. Although the United States sales of Benner's "fishstep" skis have not been numerous to date, Benner has plans for increased sales in the United States and now has about 18,400 pairs of "fishstep" skis in inventory. Third Affidavit of Wolfgang Benner, 7/5/79, at ¶ 2.

■ The balance of harms is equally clear. The evidence indicates that Benner has just commenced its American sales campaign for "fishstep" skis. Benner also sells many other lines of cross-country and downhill skis. Hence an injunction at this time would restrain Benner ·at the very beginning of its sales efforts, nipping the operation in the bud. Should we deny preliminary relief, Benner may be more firmly entrenched in the American market by the time of trial, making permanent relief more problematical. Under these circumstances, a preliminary injunction is in one sense "an act of kindness" to the defendant, since "[i]t cuts him off from a business life which, from all the portents, would involve a series of trademark frustrations." *Geo. Wash-*

*ington Mint, Inc. v. Washington Mint, Inc.,* S.D.N.Y.1972, 349 F.Supp. 255, 263.[1] And the public interest is served by promoting fair competition.

The dispositive factor then is the plaintiff's probability of succeeding at trial on the merits. In our opinion, such a likelihood of success on the Lanham Act claim under 15 U.S.C. § 1114(1) has been sufficiently demonstrated to support granting preliminary relief, especially in view of the hardships that balance so decidedly in plaintiff's favor. Defendants contend that plaintiff's mark is not registrable because it is generic or because it is descriptive without secondary meaning and therefore that it is not entitled to trademark protection under § 1114(1). Defendants also contend that even if plaintiff's mark is registrable, Benner's "fishstep" mark affixed to or used in connection with its cross-country skis is not likely to cause confusion with plaintiff's mark. Hence the parties join on these two issues, and we will discuss both. The other requirement of a § 1114(1) claim, use of "fishstep" in interstate commerce, is not disputed, nor can it be.

### Characterization of "Fishscale"

■ The most heated dispute has centered on the proper characterization of plaintiff's mark "fishscale": arbitrary or fanciful, suggestive, descriptive, or generic. The characterization problem is crucial, since different types of marks have different trademark consequences. Arbitrary, fanciful and suggestive marks are registrable under the Lanham Act and protectable at common law without proof of secondary meaning. Descriptive marks may· not be registered in the absence of secondary meaning, and generic marks are never entitled to trademark protection under any circumstances. *See generally, Abercrombie & Fitch Co. v. Hunting World Inc.,* 2 Cir. 1976, 537 F.2d 4, 9–11.

Defendants argue that "fishscale" is either generic or descriptive of the plastic

---

1. Benner contends that an injunction would require it to reface about 18,200 "fishstep" skis, resulting in "a total loss" to the company.

7/5/79 Benner Affidavit. Loss of this magnitude hardly appears to be catastrophic for a company the size of Benner.

patterned base of waxless cross-country skis. On the other hand, plaintiff insists that "fishscale" is suggestive and that even if it is descriptive there is substantial secondary meaning in the mark.

■ Before sifting these arguments, it is important to note the setting in which this case comes before us. "Fishscale" is a registered trademark, Reg. No. 1,108,104. Plaintiff obtained federal registration of "fishscale" covering snow skis on December 5, 1978. Title 15 U.S.C. § 1115(a) makes the fact of registration on the Principal Register *prima facie* proof of the registrant's right to the exclusive use of the mark, and this creates a rebuttable presumption of validity. *Educational Development Corp. v. Economy Co.,* 10 Cir. 1977, 562 F.2d 26, 28; *see, Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.,* 1 Cir. 1977, 567 F.2d 154, 161; *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 2 Cir. 1976, 537 F.2d 4.

■ "Fishscale" is certainly neither arbitrary nor fanciful. And plaintiff has demonstrated to our satisfaction that the term is also not generic. The affidavits of ski retailers, ski rental dealers, and notable cross-country skiers appended to Trak's Supplementary Brief indicate that if there is a generic term for the skis in the trade, that term is "scale" or "positive scale" skis. Also according to several of those affidavits, *e. g.,* 7/21/79 Affidavit of Edward F. Gillette, at ¶¶ 3, 5; 7/18/79 Affidavit of Charles T. Kallman, at ¶ 3; 7/10/79 Affidavit of Sven Wiik, at ¶¶ 6, 7; the consuming public associates "fishscale" with Trak skis, not with a general class of waxless cross-country skis or even with the class of plastic pattern base skis. *But see,* 7/31/79 Affidavit of Claude LaVallee, at 9, 11, 12.

Defendants place a great deal of reliance on the presence of the word "fishscale" in Webster's New International Dictionary. Yet the definition reveals that the term is merely descriptive of a type of pattern, not generic of a class of cross-country skis.

We even have difficulty determining the genus for which defendants claim "fishscale" is a generic label. Assuming the ge-

nus includes all products for which there is a cross-elasticity of demand, i. e., all types of waxless cross-country skis, *see,* J. Thomas McCarthy, *Trademarks and Unfair Competition,* Vol. 1, § 12:7 (1973), there is no evidence that "fishscale" has ever been used as a label for that genus, and it appears unlikely that it would ever come to designate mohair skis as well as plastic base skis. Moreover, there does not appear to be agreement among consumers about what the genus ought to be. The waxless cross-country ski business is relatively new and demand has mushroomed along with the recent popularization of the sport. It is not surprising then that there is not yet a consensus about the appropriate generic terms for very new model skis. Those cases in which terms have become generic because of customer usage have usually involved much longer periods of consumer use than the five or six year period in this case. *See, Scientific Applications v. Energy Conservation Corp.,* N.D.Ga.1977, 436 F.Supp. 354, 361. Based on the affidavits of ski rental dealers and retailers, plaintiff has demonstrated a likelihood of prevailing on this issue; defendants' evidence just does not support their conclusion that "fishscale" is generic.

■ The critical decision then involves a choice between the pigeonhole of suggestive marks entitled to trademark protection and the pigeonhole of descriptive marks protected only with proof of secondary meaning. The choice is highly dependent on the facts of each case. The First Circuit Court of Appeals stated the policy concern underlying the suggestive-descriptive distinction in the following terms:

> We are deeply troubled to think that a party can seize upon one of the primary characteristics that make an unpatented commercial product marketable and preempt or limit competitor reference by registering it as a trademark.

*Devcon Corporation v. Woodhill Chemical Sales Corp.,* 1 Cir. 1972, 455 F.2d 830, 832 (*per curiam*), cert. denied, 1972, 409 U.S. 845, 93 S.Ct. 48, 34 L.Ed.2d 85. The trademark law may not be used to appropriate

from the public domain terms that are essential to describe important characteristics of a product, and a company may not obtain rights in a mark that so aptly describes a feature of a product that a general request by a buyer may seem like a specific request for that company's product. *Devcon, supra,* at 833 (Aldrich, J., concurring).

■ Two tests have been fashioned out of this fundamental policy concern. One test looks to the amount of thought, imagination or perception required to connect the mark with the goods: "[d]escriptive terms are those which directly convey to the buyer the ingredients, qualities, or characteristics of the product." *Educational Development Corp. v. Economy Co.,* 10 Cir. 1977, 562 F.2d 26, 29. "Fishscale" has both descriptive and suggestive meaning. On the one hand, "fishscale" describes the pattern of overlapping discs characteristic of the configuration of both Benner and Trak ski bases. Indeed, the word "fishscale" appears in the dictionary as a descriptive of an imbricated pattern. And the "fishscale" pattern is an essential identifying feature of the skis. Defendants cite many examples of the use of the term "fishscale" in ski advertisements, journals, books and reports to describe a pattern base. Although there are other descriptive terms—scaled, snakeskin, half-moon, imbricated—there are very few nontechnical words that are as appropriate as is "fishscale."

However, "fishscale" is also suggestive, and plaintiff stresses this sense of the term. "Fishscale" suggests what the skis do, that is, move in only one direction in the snow, offering the skier both glide and kick. "Fishscale" does not convey this property to the consumer, however. The consumer must first think of a fish and the quality of fish scales before making the association with the skis. As the plaintiff points out, fish have nothing to do with cross-country skiing, and other animals, for example, snakes, could serve as equally effective, if not better, analogies.[2]

The second test focuses on whether a competitor would need the term to describe his products, i. e., the availability of other equally effective words. *Educational Development Corp., supra,* at 29. Plaintiff has submitted considerable evidence showing that its predecessors and current competitors marketing positive scale skis similar to Trak's have never used "fishscale" to describe their skis or ski bases. *See,* Plaintiff's Supplementary Brief and Accompanying Exhibits. These other companies have used and now use terms such as grip plates, semicircular discs, halfmoons, dragonskin, scaled base, or shingled base. One company, Karhu, began marketing negative scale skis under the trade name "Karhu Fishscale Hiker No-wax" until it was challenged by Trak, whereupon it changed to "Karhu Moon", employing the half-moon analogy. And another company, Nors Quip, used the mark "Fishskin" in advertisements for negative scale skis, and after Trak's objections, it changed to "Dragonskin."

Defendants counter by pointing to the numerous examples of descriptive uses of the word "fishscale" in the skiing literature, including references to "fishscale" in four skiing magazine articles discussing skis marketed by Attenhofer AG during the period 1968–71. Attenhofer AG was one of the prior licensees of the same patent under which Trak now holds an exclusive license.

Here too we must distinguish between the appearance and the function of the product. There are very few words that are as suitable as "fishscale" for describing the appearance of the base of the ski. Other companies have used other terms, an important fact to be sure, *see, Marks v. Polaroid Corporation,* D.Mass.1955, 129 F.Supp. 243, 270, *aff'd,* 1 Cir. 1956, 237 F.2d 428, but the literature, even since 1977, the year in which Trak began facing serious competition, contains a number of uses of "fishscale" in a descriptive sense.

However, "fishscale" or the fish motif is not necessary for describing the action of the ski. As we discussed *ante,* "shingled"

---

**2.** After all, a snake's skin helps to propel the snake in only one direction, whereas the scales

of a fish are not the feature that prevents that aquatic animal from moving backwards.

"snakeskin" or even "dragonskin" would serve the same purpose. In fact, William Bennet, the inventor of the ski-base and the original owner of the patent under which Trak is now licensed, described the function of the ski by analogizing it to the motion of a snake, and Attenhofer AG used both a snake and fish motif to describe its skis in a 1968 article.

On balance then the question is a close one. The term combines suggestive and descriptive elements, but the most significant property of the ski, its one-way motion over snow, is only suggested by the mark. However, we are deciding the issue against the background of a Trademark Office decision registering the mark. Because no secondary meaning was shown to the agency, that decision reflects a conclusion that the mark is not descriptive, and that conclusion entitles the mark to a presumption of validity. *Scientific Applications, supra,* at 360. The defendant has not demonstrated a likelihood of success in overcoming the presumption, and plaintiff's evidence shows that it will probably succeed on this issue.

Even if the mark were descriptive, the numerous affidavits submitted by plaintiffs demonstrate a likelihood of success in proving secondary meaning. The First Circuit Court of Appeals stated the relevant standard: "[t]here is sufficient secondary meaning as long as a significant quantity of the consuming public understand a name as referring exclusively to the appropriate party, . . ." *President & Trustees of Colby Col. v. Colby Col.-N.H.,* 1 Cir. 1975, 508 F.2d 804, 807. The court also described four ways in which secondary meaning may be shown: (1) the admitted fact of long and exclusive use, (2) the size and prominence of the enterprise, (3) an inference from substantial advertising and promotional efforts, and (4) direct evidence of secondary meaning among the product's "public". *Id.,* at 807, 808.

In the instant case, plaintiff first made use of the term "fishscale" in connection with its skis in 1971, and in 1974 plaintiff made a formal trademark use of the term in interstate commerce. From 1971 to about 1977, Trak had no notable competition, and it made exclusive use of the "fishscale" mark. Trak has invested heavily in promoting "fishscale"—about $300,000 over the past five years. Although this cannot be reasonably compared to the 97 years of exclusive use in *Colby Col., supra,* it is significant, especially in view of the prominence Trak has in the cross-country ski market, as evidenced by the affidavits appended to plaintiff's supplementary brief. Indeed, the affidavits refer to Trak as "well-known worldwide", 7/12/79 Affidavit of Michael Brady, at ¶ 5; as "the leader in waxless cross-country skis", Affidavit of A. Roger Buchika, at ¶ 3; and as the major force behind the popularization of cross-country skiing, e. g., 7/20/79 Affidavit of Robert L. Woodward, at ¶ 10; and many of the affidavits stress that among both dealers and the consuming public "fishscale" is associated with Trak.

Finally, the fourth factor, direct evidence of secondary meaning, is demonstrated by the affidavits of ski rental dealers with substantial consumer contact, e. g., 7/21/79 Affidavit of Edward Gillette, at ¶¶ 3–4, and ski retailers, e. g., 7/18/79 Affidavit of Theodore Rowland, at ¶ 5; 7/17/79 Affidavit of Kenwood Jones, at ¶ 4; at least adequately enough to warrant issuance of a preliminary injunction. *See, Pic Design Corp. v. Bearings Specialty Co.,* 1 Cir. 1971, 436 F.2d 804, 807. Certainly the plaintiff's evidence strongly indicates that there is a strong secondary meaning among dealers. But plaintiff's indirect evidence—impressions of retailers and rental dealers—is somewhat weak for showing the consuming public's reaction to "fishscale". *Compare, Colby Col., supra,* at 808–809 (formal survey of public conducted).

Defendants contend that uses of the mark in a descriptive sense throughout the literature demonstrate that the mark has not developed secondary meaning. In the face of plaintiff's persuasive showing through affidavits, defendants must come forward with more than a list of improper uses of the term. Defendants might show the weakness of plaintiff's mark by compar-

ing the number of improper uses with the number of proper uses. This they have not yet done.

Defendants have introduced some insubstantial issues into the case, which we will treat summarily. First, they insist that plaintiff comes to the court with unclean hands because it did not show models of the skis to the Trademark Office or provide a description of the base pattern. The photographs accompanying the application show the fishscale pattern, and as plaintiff points out in its Reply Brief, at pp. 12–13, the examiner who approved Trak's "fishscale" application was the same examiner who considered other trademark applications by Trak in the past and, therefore, was quite familiar with Trak products. If any party comes into the court with unclean hands, it would appear to be Benner, who uses the symbol ⓡ in connection with its skis without having obtained a United States registration for its mark.

█ Second, even after the hearing defendants continue to cite and discuss cases dealing with the protection accorded functional configurations. The principle that a functional trademark is not registrable is confined to shapes. *See,* McCarthy, *supra,* Vol. 1, § 7:26. The plaintiff is not using a shape, and the defendants' argument that the term "fishscale" is somehow equivalent to a shape is without legal basis.

Plaintiff has, in our opinion, demonstrated a likelihood of proving that "fishscale" is a suggestive mark and, in the alternative, that it has secondary meaning.

### Likelihood of Confusion

█ The word "fishstep" uses the same characteristic fish motif as does "fishscale", and plaintiff's affiants attest to the likelihood of consumers' confusing the parties' products. According to the affidavits, most purchasers of cross-country skis are unsophisticated buyers who learn of particular

skis from advertisements or by word-of-mouth. Consumers of this sort are likely to seize upon the "fish" analogy and use that reference to designate the skis they wish to purchase. Hence it appears that there will be considerable confusion.

Defendants argue, however, that the juxtaposition of their name, Benner, in bold type next to "fishstep" in small letters will allay consumer confusion. According to this argument, purchasers, cannot but know that they are purchasing a Benner, not a Trak, ski. This argument misses the point. First, the presence of "Benner" on the ski might suggest to the consumer that Benner somehow is licensed to do business by Trak. *A. T. Cross Company v. Jonathan Bradley Pens, Inc.,* 2 Cir. 1972, 470 F.2d 689, 692. Second, the affidavits indicate that consumers know that one company markets "fishscale" skis, although they may not know that the company is Trak. This is adequate to establish secondary meaning; *see, Feathercombs, Inc. v. Solo Products Corporation,* 2 Cir. 1962, 306 F.2d 251, 255; and the opportunities for confusion in these circumstances are clear. *See generally, Electronics Corp. of Amer. v. Republic Industries, Inc.,* 1 Cir. 1974, 507 F.2d 409, 410, *cert. denied,* 1975, 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 102.

### Conclusion

Therefore, plaintiff has demonstrated a likelihood of succeeding on the merits of its claim based on 15 U.S.C. § 1114(1). Since it has also satisfied the other conditions for preliminary relief, we grant the motion for a preliminary injunction.[3]

---

**3.** The Court's order that a preliminary injunction issue upon giving of security under Rule 65(c), Fed.R.Civ.P., in the sum of $50,000 was entered last week, on August 30, 1979, in conjunction with a procedural order that further

submissions be filed by the parties as to the amount of security appropriate under Rule 65(c), Fed.R.Civ.P., and the scope and form of the injunction.