The KEDS CORP., Plaintiff, Appellee,

v.

RENEE INTERNATIONAL TRADING
CORP., Defendant, Appellant.

No. 89–1679.

United States Court of Appeals,
First Circuit.

Heard Sept. 12, 1989.

Decided Nov. 3, 1989.

As Amended Nov. 6, 1989.

Alfred W. Breiner, with whom Theodore A. Breiner, Mary J. Breiner, Breiner & Breiner, Alexandria, Va., Lee T. Gesmer, and Lucash, Gesmer & Updegrove, Boston, Mass., were on brief, for defendant, appellant.

Robert E. Hillman, with whom Heidi E. Harvey and Fish & Richardson, Boston, Mass., were on brief, for plaintiff, appellee.

Before BOWNES, TORRUELLA and MAYER,* Circuit Judges.

BOWNES, Circuit Judge.

Renee International Trading Company (Renee) appeals from a preliminary injunc-

* Of the United States Court of Appeals for the Federal Circuit, sitting by designation.

tion entered by the District Court of Massachusetts that prohibits it from selling women's canvas sneakers with blue rectangle labels impressed with the word "Apples" attached to the heel. The injunction was entered at the request of the Keds Corporation (Keds). Keds alleged that it was the holder of an incontestable trademark for a blue rectangle label or "kicker" attached to the heel or instep of a shoe that Renee had infringed. Renee claims that the district court did not have personal jurisdiction over it and that Keds did not meet the requirements for a preliminary injunction.

## I.

Keds, a Massachusetts corporation, is one of the largest manufacturers and distributors of canvas sneakers in the U.S. and has enjoyed a recent surge in popularity. Since at least 1925, Keds has attached a small (1″ × 1½″) blue rectangular rubber label impressed with the word "Keds" in raised letters (the blue label) on the heel of most of the shoes it sells. In 1956, Keds attempted to register the blue label, without the word Keds, as a trademark.[1] The Patent and Trademark Office (PTO) initially refused to register the mark claiming that it was merely background for the word "Keds" and had no secondary meaning. After dogged persistence by Keds, the PTO was convinced that the blue label functions as a trademark at the consumer level and allowed registration. In 1959, the PTO published the blue label as a trademark in the Principal Register with Trademark Registration No. 685,185. After 5 years, Keds filed an affidavit of continued use, which stated that there had been no adverse decisions or existing claims to ownership. Under the provisions of the Lanham Trade–Mark Act (the Act) the mark became "incontestable." 15 U.S.C. § 1065. Keds has renewed its rights in the mark until September 15, 1999.

Renee, a New York corporation, has recently entered the canvas shoe business as an importer. Renee imports canvas sneakers with blue labels impressed with the word "Apples" and with pink labels impressed with the word "Renee." Renee sells its shoes to wholesalers through its office in New York City.

This case was precipitated by the sale of approximately $15,000 worth of Apples shoes (approximately 6000 pairs) to a wholesaler in Massachusetts. The sale was solicited by a telephone call from a Renee salesman to Maxwell Blum (Blum) in Hyde Park, Massachusetts, in January, 1989. After making the sale over the telephone, Renee shipped the shoes to Blum in Massachusetts. Presumably, Renee also sent the invoice to Blum in Massachusetts who paid it. There was also evidence that Renee advertised in a magazine distributed in Massachusetts. Blum sold those shoes to Marshalls Department Store in Boston, where some of the shoes ended up for sale in direct competition with similar Keds shoes.

After its first sale to Blum, Renee again contacted him by telephone and offered to sell him additional shoes. He requested, and was sent, 18 sample shoes on April 13, 1989.

Upon discovery of the Apples shoes in Boston, Keds contacted Marshalls, Blum, and Renee and informed each that Keds had a trademark on the blue label, which it believed the Apples shoes were infringing. Marshalls and Blum apparently agreed to stop selling the shoes. Renee agreed not to manufacture any additional shoes with blue labels but refused to stop selling its remaining inventory of over 100,000 pairs of shoes.[2]

Keds brought this diversity jurisdiction suit against Renee alleging trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. 1051 *et seq*, and various state law trademark and consumer protection violations. Keds requested a temporary restraining order, which the district court issued. Renee

---

**1.** The word "Keds" is a separate trademark over which there is no dispute.

**2.** Renee has now stated that it will continue to produce blue label shoes if the district court is reversed.

made a motion to dismiss for lack of personal jurisdiction. The district court denied that motion. On Keds's motion, after briefs were filed and oral argument heard, the district court issued a preliminary injunction dated June 23, 1989, that prohibits Renee from selling, distributing or soliciting for sale in the United States canvas footwear that has a blue rectangular kicker. Renee appeals both the denial of its motion to dismiss for lack of jurisdiction and the granting of the preliminary injunction.

## II.

■ In reviewing personal jurisdiction in a diversity case, a federal court must consider whether jurisdiction is authorized by state statute and consistent with due process. We first look to state law. *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 981 (1st Cir.1986); *Gray v. O'Brien*, 777 F.2d 864, 866 (1st Cir.1985); *Hahn v. Vermont Law School*, 698 F.2d 48, 49–50 (1st Cir. 1983).

A. Long Arm statute.

The Massachusetts long arm statute provides that a non-resident may be subject to the jurisdiction of the Massachusetts courts if they

caus[ed] tortious injury in th[e] commonwealth by an act or omission outside th[e] commonwealth ... [and] derive substantial revenue from goods used or consumed ... in th[e] commonwealth

Mass.Gen.L. ch. 223A § 3(d). Keds alleges that Renee has committed the tort of trademark infringement in Massachusetts and claims jurisdiction based on § 3(d). Keds does not claim jurisdiction based on any of the other possible grounds under the long arm statute. Renee contends that it does not do business in Massachusetts and has not committed a tort there.

■ First, we examine whether the sale to Blum by Renee could have caused tortious injury in Massachusetts. The Lanham Act prohibits

use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with such use that is likely to cause confusion, to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a). The "tort" of infringement is thus the use of a registered mark in connection with the sale of goods, without the consent of the owner, that is likely to cause confusion. It is not necessary to show actual confusion. *Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 490 (1st Cir.1981); *See also Squirt Co. v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1186 (5th Cir.1980) *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). All that is required is a likelihood of confusion. The likelihood of confusion creates an injury. The injury in an infringement case is two-fold: to the trademark owner through loss of good will and presumably profits and to the public because of confusion caused by the similar marks. Economic injury in the form of lost sales in the forum state is sufficient to satisfy the injury requirement for jurisdiction. *Buckeye Associates v. Fila Sports, Inc.*, 616 F.Supp. 1484, 1493 (D.Mass.1985).

■ Renee asserts that because Blum did not know that the shoes he ordered had blue kickers, he was not confused about the origin or maker of the shoes, so there was no tort. But the relevant question is not whether Blum was actually confused, but whether consumers are likely to be confused. On that issue, the court below ruled clearly and correctly. *See, infra Section III.*

■ Renee argues extensively that because the title of the goods it sells always passes in New York, it only does business in New York. But even assuming that the title passed outside Massachusetts, that does not prevent jurisdiction under § 3(d). The long arm statute was designed to encompass exactly this type of activity. Mass.Gen.L. ch. 223A § 3(d) requires an act outside of the commonwealth (the sale of the shoes) that causes injury (infringement) within the commonwealth. The key

question, which must be answered in the affirmative, is whether Renee was purposely soliciting business in Massachusetts.

 The second of the two requirements of the statute, the "substantial revenue" requirement, need not detain us. It is well settled under Massachusetts law that "substantial revenue" is not an absolute amount nor an absolute percentage of total sale. *See, e.g., Heins v. Wilhelm Loh Wetzlar Optical Machinery GmbH*, 26 Mass.App.Ct. 14, 522 N.E.2d 989, 994 n. 5 *review denied*, 402 Mass. 1105, 525 N.E.2d 678 (1988). All that is required is literal satisfaction of the statutory requirement. *Heins*, 26 Mass.App. at 20, 522 N.E.2d at 993. The sale of 6000 pairs of shoes for $15,000 easily meets this requirement. *See, e.g., Mark v. Obear & Sons Co.*, 313 F.Supp. 373, 375–376 (D.Mass.1970) ($5000 in sales enough for statute). Although Renee feebly argues that it has not made any sales in/to Massachusetts including the sales to Blum, because the title passed in New York, it strains credulity to argue that soliciting sales, shipping goods, soliciting additional sales and receiving payment from an individual in Massachusetts does not involve interstate commerce. *See, e.g., Heins*, 522 N.E.2d at 993–994. The logical extreme of Renee's argument would be that it is not involved in interstate commerce and thus not subject to the provisions of the Act at all.

 Renee relies heavily on *Droukas v. Drivers Training Academy, Inc.*, 375 Mass. 149, 376 N.E.2d 548 (1978) to support its lack of jurisdiction argument. This reliance is misplaced because the issue of jurisdiction in that case was decided under Mass.Gen.L. ch. 223A § 3(a)–(b) rather than under § 3(d). In that case the court was trying to determine if there was general jurisdiction based on transacting business or supplying services in Massachusetts. In addition, Renee purposely availed itself of the protection of Massachusetts laws, by soliciting sales, to a greater extent than did the defendant in *Droukas*.

On a motion to dismiss under the liberal pleading rules of the Federal Rules of Civil Procedure, all Keds must do is allege inju-

ry. The district court found that Keds has done so and that decision is not clearly erroneous. Keds has alleged sufficient facts to establish jurisdiction under the Massachusetts long arm statute. Next, we determine whether such jurisdiction passes constitutional muster.

**B. Due process considerations.**

 The "Constitutional touchstone" for determining whether the application of personal jurisdiction comports with the due process requirements of the Constitution is "whether the defendant purposely established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *See also Nicholas v. Buchanan*, 806 F.2d 305, 307 (1st Cir.1986) *cert. denied*, 481 U.S. 1071, 107 S.Ct. 2466, 95 L.Ed.2d 875 (1987). A defendant purposely must avail himself of the privileges and protection of state law and reasonably anticipate being hauled into court there. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Nicholas*, 806 F.2d at 307. *See also Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033–34, 94 L.Ed.2d 92 (1987) (opinion of O'Connor, J); *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183. Physical contact with the state is not required if the defendant purposely has directed activity toward the forum state.

 Under the applicable law, we rule that Renee can constitutionally be subject to jurisdiction in Massachusetts. Renee intentionally availed itself of the protection of Massachusetts law. It called a shoe distributor in Massachusetts to encourage the distributor to purchase and sell Renee's shoes in Massachusetts. Although Renee argues that all that is at issue here is one sale, that sale consisted of an order for about 6000 pairs of shoes. Renee knew that Blum was not purchasing all of these shoes for his own use, but rather intended to sell them in Massachusetts. In addition,

Renee shipped samples of other shoes to Blum in the hope that additional sales, and perhaps a long-term relationship, would develop. This is not a case where Renee put the shoes into the stream of commerce and they fortuitously ended up in Massachusetts. *Cf. Asahi Metal,* 480 U.S. at 108–112, 107 S.Ct. at 1031–33 (Opinion of O'Connor, J.); *Dalmau Rodriguez v. Hughes Aircraft Co.,* 781 F.2d 9, 15 (1st Cir.1986). Renee could reasonably expect to be sued in Massachusetts given its clear intent to begin distribution in Massachusetts.

In addition to "minimum contacts," the exercise of specific jurisdiction over a defendant must comport with "fair play and substantial justice." *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160; *See also Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. "To show unfairness, a defendant who purposely has directed his activities at forum residents [and] seek[s] to defeat jurisdiction ... must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185. Renee has not done so.

### III.

■ We now turn to examining the merits of the granting of the preliminary injunction. A district court may grant a preliminary injunction when

> (1) the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting the injunction would inflict on the defendant; (3) that the plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981). In a trademark case, the key issue is the likelihood of success on the merits because the other decisions will flow from that ruling. *Trak, Inc. v. Benner Ski, K.G.,* 475 F.Supp. 1076, 1078 (D.Mass. 1979) ("if defendants are unlawfully infringing plaintiff's trademark, irreparable harm flows from the injury....").

Renee argues that Keds is not likely to succeed because the Keds registration is invalid and unregisterable. In addition, it argues that if the mark is registerable, then there is no likelihood of confusion between the marks.

#### A. Keds registration

■ Keds has used the blue label continually since 1925. The mark was registered in 1959 and became "incontestable" within the meaning of the Lanham Act in 1964. In general, registration creates a presumption in favor of the registrant. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 196, 105 S.Ct. 658, 662–63, 83 L.Ed.2d 582 (1985). An incontestible mark is "conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods specified." 15 U.S.C. § 1115(b). The holder of a registered mark may rely on incontestability to enjoin infringement and such an action cannot be defended on the grounds that the mark is merely descriptive. *Park 'N Fly,* 469 U.S. at 205, 105 S.Ct. at 667.

The Act allows only certain limited defenses to incontestability such as fraud, abandonment, prior registration and antitrust violations. 15 U.S.C. § 1115(b)(1–7); *see also,* 15 U.S.C. § 1064(c), (e) (cancellation); 15 U.S.C. § 1065(1–4) (limitations on incontestability); *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 373 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

Renee argues that the Keds blue label is merely functional and thus not registerable. Although functionality is not one of the exceptions to the incontestability provisions of the Act, Renee argues that functionality is similar to a name becoming generic so that by analogy, it should also be a defense to an infringement claim. The Act allows marks that have become generic ("the common descriptive name of an article") to be cancelled at any time. 15 U.S.C. § 1064(c); *Park 'N Fly,* 469 U.S. at 194, 105 S.Ct. at 661–62. Conversely, it is

well settled that an incontestable mark may not be challenged as merely descriptive of the product. *Park 'N Fly*, 469 U.S. at 196, 105 S.Ct. at 662–63.

▮ We agree with the district court that in this case the functionality argument has no merit. The district court ruled that the Keds mark was not generic or functional within the meaning of the Act. Because we decide that functionality is not applicable here, we decline to determine whether functionality can ever be a defense to an infringement claim.

Renee has fashioned its functionality argument from language in two of our previous cases. *Fisher Stoves Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir.1980); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 378 (1st Cir.1980). These cases stand for the proposition that, absent other factors, functional shapes are not subject to appropriation by manufacturers. *Fisher*, 626 F.2d at 195 (absent valid trademark); *Keebler*, 624 F.2d at 378 (absent secondary meaning). Keds relies on these other factors. Keds has at least a valid incontestable trademark in the blue label. Keds also has argued that the blue label has secondary meaning.

The primary "function" that Renee claims for the labels is that the kickers identify the product. That is precisely the purpose of a trademark; thus, that function cannot be a valid grounds for attacking a trademark.

The functionality argument has two prongs: not only does Renee argue that the label is functional but also "that the color blue for sneaker kickers is needed ... to compete effectively in the sneaker industry." Appellants Br. at 31. But the argument proves too much. What Renee seems to be claiming is that it must be able to produce shoes that look like Keds shoes in order to compete effectively. Rather than supporting any of Renee's claims, that argument supports the district court's finding that "Keds shoes['s] ... commercial success and ... recent surge in popularity ... is attributable [at least in part] to consumer recognition of Keds as the source of

footwear with the blue label." Slip op. at 10.

▮ Finally, Renee argues that the blue label is not registerable because of technical problems with the mark. For example, Renee trots out the old color depletion theory that because primary colors are limited, no one may trademark a color. This theory has been criticized under the Lanham Act. *See, e.g., In re Owens–Corning Fiberglas Corp.*, 774 F.2d 1116 (Fed. Cir.1985). But in this case we need not decide whether color alone can be trademarked because color is used in connection with a non-functional shape in the blue label, and the shape has secondary meaning (or at least the presumption of it because of the incontestable trademark). Although a company may not be able to trademark a color, color in combination with a distinctive design or shape may be trademarked if it develops a secondary meaning. *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 161 (1st Cir. 1977) (*citing Mishawaka Rubber and Woolen Mfg. Co. v. Panther–Panco Rubber Co.*, 153 F.2d 662 (1st Cir.1946)). In addition, the "color only" issue was certainly before the PTO, and the PTO decided that there was secondary meaning. There is no evidence that either the PTO or the district court were wrong.

▮ Renee also argues that the Keds trademark on the blue label is invalid because the blue label is always used in connection with the word "Keds." This argument runs afoul of precedent. It has already been settled by this court that two trademarks can always be used together without invalidating either mark. *See, e.g., Quabaug Rubber*, 567 F.2d at 161 & n. 12; *See also General Foods Corp. v. Ito Yakado Co.*, 219 U.S.P.Q. 822, 821–25 (T.T.A.B. 1983).

Renee alleges that the Keds blue label registration might have been obtained fraudulently either because Keds did not disclose the "functional" nature of the kicker to the PTO or because the information on consumers' confusion was incorrect. These arguments are unsupported by any evidence. In addition, no negative infer-

ence can be drawn from the many appearances that Keds made before the PTO. *Park 'N Fly*, 469 U.S. at 202, 105 S.Ct. at 665–66. In fact, those appearances show the careful scrutiny that was given to the Keds application. *Id.*

### B. Infringement

Because, on the information before us, Keds has a valid incontestable trademark in the blue label, we now consider whether Keds is likely to succeed on its infringement claim. This inquiry centers on whether there is likely to be confusion between the two marks among perspective purchasers of women's canvas sneakers.

The factors to be considered in analyzing likelihood of confusion in this circuit are:

1. similarity of the marks;
2. similarity of the goods;
3. relationship between the parties' channels of trade;
4. the relationship between the parties' advertising;
5. the classes of prospective purchasers;
6. evidence of actual confusion;
7. the defendant's intent in adopting the mark; and
8. the strength of the plaintiff's mark.

*Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 29–34 (1st Cir.1989); *Volkswagenwerk AG v. Wheeler*, 814 F.2d 812, 817 (1st Cir.1987). No one factor is necessarily determinative, but each must be considered. *Volkswagenwerk*, 814 F.2d at 817.

The district court analyzed these factors and determined that Keds had a likelihood of success on its infringement action. We review a district court's evaluation of evidence and finding of a likelihood of confusion based on a "clearly erroneous" standard. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 377 (1st Cir.1980). We agree with the district court's findings and only briefly comment on them.

The district court found that there is "no doubt" that Renee's mark "is nearly identical to Keds' blue label in size, shape and location and color." We agree that the labels are virtually identical except for the words impressed on the label. This is due in no small part to the fact that both companies use the same factory in China to produce some of their shoes.

Renee argues that any confusion about the origin of the goods is resolved because they impress their name on the label. But that fails to address the possibility that individuals might assume that Apples were made by Keds. *See, e.g., Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir.1980); *See also Trak*, 475 F.Supp. at 1082. The Ninth Circuit, in evaluating a claim by a jeans company that its label, although similar in design to that of the defendant, used different words, held that the use of different words did not avoid likelihood of confusion. *Levi*, 632 F.2d at 822. In addition, the court noted that with clothing an additional concern is that prospective consumers, viewing the clothes on other people, would be confused as to the origin of the goods. Thus, point of sale confusion was not the only issue. *Id.* With sneaker labels, where the impressed words can only be read a few feet away from the eyes, such confusion is quite relevant.

In determining a trademark's relative strength we have examined "the length of time a mark has been used and the relative renown in its field; the strength of the mark in plaintiff's field of business; and the plaintiff's action in promoting the mark." *Boston Athletic Ass'n*, 867 F.2d at 32. In applying that standard the district court found that Keds had a strong mark. Keds has used the mark continuously for over sixty years. The mark has been registered for about thirty years. Keds has advertised extensively in support of the brand. It is, by all accounts, the leader in the industry. The district court found that Keds has a strong mark, and we agree.

Finally, we agree with the district court's finding that Renee's intent was to capitalize on the popularity of the Keds sneakers.

Given all of these factors, the district court correctly found that it was likely that

consumers would be confused by the Apples labels. Thus, Keds was likely to succeed on the merits of its infringement claim. The district court also correctly ruled that the other factors to be considered before issuing a preliminary injunction also weighed heavily in Keds favor. We agree.

Affirmed. Costs awarded to appellee.