**HIGH COUNTRY INVESTOR, INC., Plaintiff**

v.

**McADAMS, INC., Defendant**

**No. CIV.A.02–10739–GAO.**

United States District Court, D. Massachusetts.

Aug. 13, 2002.

---

Randolph L. Smith, Peabody & Arnold LLP, Boston, MA, for High Country Investor Inc., Plaintiff.

Thomas E. Kenney, Pierce & Mandell, PC, Boston, MA, for McAdams Inc., Defendant.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff, High Country Investor, Inc. ("High Country"), has brought this suit against the defendant, McAdams, Inc. ("McAdams"), for trademark infringement. High Country owns and operates two restaurants in Massachusetts, each called the Hilltop Steak House. McAdams recently purchased a restaurant in Maine which, at the time, was called the Hilltop House Restaurant ("Hilltop House"). After purchasing the restaurant, McAdams began calling it the "Hilltop Steakhouse." Before the Court are McAdams's motion to dismiss the action for lack of personal jurisdiction (Docket No. 3) and High Country's motion for a preliminary injunction restraining McAdams from using the phrase "Hilltop Steakhouse" (Docket No. 8). For the reasons discussed below, this Court concludes that personal jurisdiction over McAdams is lacking, and the case is therefore dismissed.

### A. *Nature of the Controversy*

High Country owns the Hilltop Steak House restaurants in Saugus and Braintree, Massachusetts, and it owns the federally registered trademarks "Hilltop Steak House," "Hilltop Steak House Frank Giuffrida," and "Hilltop." The Hilltop Steak House in Saugus has been doing business under that name for approximately fifty years. High Country advertises its restaurants in print and on the radio, television, and Internet. According to a customer research survey commissioned by High Country, about ten percent of its customers are from out of state.

Since the 1950s there has also been a "Hilltop" restaurant in Ellsworth, Maine. In 1959, Joseph Saunders purchased a restaurant known as Goodwin's Hilltop Lunch located, it will surprise no one to learn, on top of a hill in Ellsworth. When he bought the restaurant, he changed its name to "The Hilltopper." In the 1960s, Saunders changed the name again, this time to "Hilltop House." McAdams, a corporation owned and operated by Troy Adams and Robert McKinney, bought the restaurant in 2001. Shortly thereafter, McAdams placed new signs on the restaurant which

read, "Hilltop Steakhouse." It also used the name "Hilltop Steakhouse" on wine and beer menus and on customer receipts.

High Country alleges it first became aware of McAdams's use of the name "Hilltop Steakhouse" when it began to get phone calls from customers asking about its new restaurant in Maine. Sensing infringement of its marks and good will, High Country brought this suit. McAdams asserts that since being served with the complaint, it has voluntarily taken steps to avoid infringement. "In particular, McAdams removed the word 'steak' from all signage for the restaurant; McAdams has changed, or shortly will change all menus to remove the word 'steak' from the restaurant name; the restaurant employees do not answer the phone with the phrase 'Hilltop Steakhouse;' and McAdams does not advertise with the words 'Hilltop Steakhouse.'" Def.'s Mem. in Opp'n to a Prelim. Inj., at 5.

B. *Personal Jurisdiction*

■ This Court has personal jurisdiction over a defendant in a diversity case if the defendant is within the reach of the Massachusetts long-arm statute, and if the exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir.1994). The Massachusetts long-arm statute grants its courts jurisdiction over a defendant if the plaintiff's cause of action arises, among other things, from a defendant "(a) transacting any business in this commonwealth; ... [or] (c) causing tortious injury by an act or omission in this commonwealth." Mass. Gen. Laws ch. 223A, § 3. If the plaintiff's claims arise out of tortious acts the defendant committed outside of Massachusetts, the long-arm statute grants jurisdiction if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue

from goods used or consumed or services rendered, in this commonwealth." *Id.* § 3(d).

McAdams's restaurant caters to residents and visitors in the vicinity of Ellsworth, Maine. (Ellsworth is about 250 miles from Saugus and a bit more from Braintree, farther than most people would consider driving for a steak, even a good one.) The restaurant seeks to promote business by advertising in publications aimed at Ellsworth area residents and visitors. Thus, McAdams has advertised in a booklet, "Maine's Best Regional Guide," published by the Ellsworth Area Chamber of Commerce. A copy of the booklet was displayed at the hearing on the present motions. It consists of 104 pages of advertisements for various businesses in the "Downeast and Acadia" region of Maine, along with maps and descriptions of local attractions. It is the kind of booklet that can typically be found in a rack near the registration desk of any motel. In addition, however, the Ellsworth Chamber of Commerce mails copies out of state, no doubt in an effort to stimulate tourism to the area. In 2001, more than 80,000 such booklets were distributed out of state, with about 15,000 copies being sent into Massachusetts. The booklets so distributed included a half-page ad for the McAdams restaurant, described as "Hilltop Steakhouse."

McAdams's restaurant also has advertised in the local newspaper, the Ellsworth *American*. The *American* maintains a website, and the website has, at least on occasion, also carried an ad for the "Hilltop Steakhouse." The *American* website can, of course, be accessed by residents of Massachusetts. It is, however, a passive site, at least as far as restaurant advertisements are concerned. There is no direct communication, by link or otherwise, from

the *American* website to the McAdams restaurant.

High Country relies on the advertisements in the Chamber of Commerce guide and the *American* website to support its argument that this Court has jurisdiction over McAdams under §§ 3(a), (c), and (d) of the Massachusetts long-arm statute. There do not appear to be any other "contacts" between McAdams and Massachusetts.

■ The advertising contacts are insufficient to satisfy any of the cited long-arm provisions. Advertisements which happen to circulate in Massachusetts are not contact enough to amount to "transacting any business in this commonwealth" under § 3(a). *See Droukas v. Divers Training Acad., Inc.,* 375 Mass. 149, 376 N.E.2d 548, 549–51 (1978); *Gunner v. Elmwood Dodge, Inc.,* 24 Mass.App.Ct. 96, 506 N.E.2d 175, 176 (1987). In *Gunner,* the court concluded that advertisements in general trade magazines which happen to circulate in Massachusetts are not enough to constitute "transacting business" within the commonwealth under § 3(a) unless they are "aimed squarely at Massachusetts targets." *See Gunner,* 506 N.E.2d at 176–77. In *Gunner,* a Rhode Island car dealer "persistently" directed newspaper and electronic advertising at prospective customers across the state line in Massachusetts. That is far different from what appears here. In this case, McAdams's ads placed in local publications cannot reasonably be understood to have been purposefully directed at Massachusetts residents, even if it was foreseeable, as it probably was, that the publications would reach some number of Massachusetts readers. *See also Lyle Richards Int'l, Ltd. v. Ashworth, Inc.,* 132 F.3d 111, 112 (1st Cir.1997) (non-resident's contacts with forum State must be deliberate, not merely fortuitous).

■ McAdams also did not "caus[e] tortious injury by an act or omission in this commonwealth" as required under § 3(c). The First Circuit has described trademark infringement as "the use of a registered mark in connection with the sale of goods, without the consent of the owner." *Keds Corp. v. Renee Int'l Trading Corp.,* 888 F.2d 215, 218 (1st Cir.1989). McAdams's use of High Country's trademark occurred in Maine, not in Massachusetts. The fact that the advertisements, placed locally in Maine publications by McAdams, are distributed by others in Massachusetts does not mean that McAdams' infringement occurred in Massachusetts. And, of course, the fact that any economic "harm" is felt by High Country in Massachusetts does not mean that infringement occurred here. *See id.*

High Country argues that McAdams's advertising activities are analogous to those of the defendants in *Northern Light Tech., Inc. v. Northern Lights Club,* 97 F.Supp.2d 96 (D.Mass.2000) and *Digital Equip. Corp. v. AltaVista Tech., Inc.,* 960 F.Supp. 456 (D.Mass.1997), who were found to have committed tortious injury in Massachusetts by "sending" information into the commonwealth through the Internet. However, the defendant's on-line activities and contacts with Massachusetts in those cases were markedly different from the McAdams' limited advertising, sent to Massachusetts by others. In *Digital Equipment,* the plaintiff and defendant had entered into a licensing agreement which was to be governed by Massachusetts law. 960 F.Supp. at 463. The defendant's use of the plaintiff's trademark on its web site merely brought the defendant "over the line" to render personal jurisdiction appropriate. *Id.* Additionally, a visitor to the defendant's web site could preview and purchase the defendant's product on-line. *Id.* at 460. Thus, Massachusetts residents could engage in transactions with

the defendant directly through the Internet. In *Northern Light*, the plaintiff and defendant both were Internet-based companies, and the dispute was over the defendant's use of the web site address www.northernlights.com. 97 F.Supp.2d at 104–06. As in *Digital Equipment*, the defendant's web site was not "passive" and it sought "to entice users either to post their own link on the site or to advertise on the site." *Northern Light*, 97 F.Supp.2d at 105. The defendant's web site also offered its visitors a search tool which was confusingly similar to the Internet search capabilities offered by the plaintiff's web site. The significant fact in both cases was that the defendants were actually engaging in on-line commerce through a web-based interface and therefore could be considered to be engaging in activity on and through their web sites.

The on-line advertisement for Mc-Adams's restaurant does not resemble the on-line activities of the defendants in *Northern Light* or *Digital Equipment*. First, McAdams is not using the Internet to sell its products or services to Massachusetts Internet users. Second, the web site advertisement is wholly passive and does not enable Massachusetts residents to interact with McAdams. The only way a Massachusetts resident can interact with McAdams is by traveling to Ellsworth, Maine.

■ With respect to § 3(d) of the long-arm statute, a Massachusetts court has jurisdiction over a defendant whose tortious acts occur outside of Massachusetts and cause harm within the commonwealth only if the defendant engages in a regular pattern of business in Massachusetts. There is no evidence here of "regular" solicitation of business in Massachusetts or of "any other persistent course of conduct" aimed at Massachusetts residents. *Cf. Gunner*, 506 N.E.2d at 175–77 (car dealership which routinely and deliberately

sought customers in Massachusetts through direct mailings, daily advertisements in Massachusetts newspapers, and regular ads on Massachusetts radio stations met requirements of § 3(d)). Again, *Digital Equipment*. is inapposite. In that case, the defendant's web site met § 3(d)'s requirements because it sold advertising space and software directly through the site. *See* 960 F.Supp. at 467. In contrast, McAdams's on-line advertisement did not sell anything directly to Massachusetts residents.

■ Even if McAdams's activities could be thought to meet the requirements of the long-arm statute, the contacts are not sufficient to satisfy the requirements of due process. Under *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), a court has personal jurisdiction over a defendant only if the defendant has had either "continuous and systematic" contacts with the forum state, *id.* at 317, 66 S.Ct. 154, or if the defendant has had·sufficient "minimum contacts" with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. 154 (citation omitted). As pointed out above, McAdams's activities in Massachusetts do not rise to the level of being "continuous and systematic."

A defendant has sufficient minimum contacts with a forum state if it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The alleged wrongful acts by a non-resident defendant must be "purposefully directed" at the forum State. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). *See also Hasbro*

*Inc. v. Clue Computing, Inc.*, 994 F.Supp. 34, 44 (D.Mass.1997) ("The purposeful availment test articulated ... in *Asahi,* and applied by the courts in trademark infringement cases, requires that the defendant's contact with the forum state not be due to happenstance."). McAdams's advertisements do not sufficiently target Massachusetts and its residents to satisfy these standards.

### C. Conclusion

McAdams's contacts with Massachusetts are insufficient to permit this Court to exercise personal jurisdiction over it. McAdams's motion to dismiss is GRANTED, and this Court is without authority to pass on the preliminary injunction. The action is DISMISSED.

It is SO ORDERED.