EQUINE TECHNOLOGIES,
INC., Plaintiff–Appellee,

v.

EQUITECHNOLOGY, INCORPORATED
and Ronald Laroche, Defendants–
Appellants.

No. 95–1098.

United States Court of Appeals,
First Circuit.

Heard June 9, 1995.

Decided Nov. 3, 1995.

Scott J. Fields, with whom Duane, Morris & Heckscher, Philadelphia, PA, Lawrence G. Green and Perkins, Smith & Cohen, Boston, MA, were on brief for appellants.

Victor H. Polk, Jr., with whom Bingham, Dana & Gould was on brief, Boston, MA, for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Chief Judge.

Plaintiff-appellee, Equine Technologies, Inc., brought a trademark infringement action against defendants-appellants, Equitechnology, Inc., and Ronald Larouche (its founder). The district court granted plaintiff's motion for a preliminary injunction, and defendant appeals. We affirm.

### BACKGROUND

Plaintiff is a Massachusetts corporation which has developed and patented a line of specialized "hoof pads" ·which act as shock absorbers for horses. Plaintiff has sold its hoof pads under the trademark "EQUINE TECHNOLOGIES"[1] since 1989. Plaintiff also sells a hoof cleanser called CLEAN TRAX which is also sold under the EQUINE TECHNOLOGIES mark. Plaintiff's mark has been registered on the Primary Register of the Patent and Trademark Office ("PTO") since March 1993.

Defendant, a Florida corporation, began marketing and selling hoof care products using the mark "EQUITECHNOLOGIES" in 1993. In its promotion efforts, defendant has stated that the "shock absorption qualities" of its product make it "ideal as a custom hoof pad." Defendant's petition for trademark registration was preliminarily rejected by the PTO on the grounds that it was confusingly similar to the mark registered by plaintiff. Notwithstanding the ruling of the PTO, defendant has continued to append the official trademark registration to its mark.

Plaintiff sued defendant in the United States District Court for Massachusetts alleging federal and state claims of trademark infringement and unfair competition, and moved for a preliminary injunction to enjoin defendant from using the mark Equitechnologies during the pendency of the lawsuit.

---

1. The "u" in EQUINE is in the form of a horse-shoe.

The district court granted the preliminary injunction, and defendant appeals.

## DISCUSSION

■ "Trademark law seeks to prevent one seller from using the same 'mark' as—or one similar to—that used by another in such a way that he confuses the public about who really produced the goods (or service)." *De-Costa v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992); *WCVB–TV v. Boston Athletic Ass'n*, 926 F.2d 42, 43 (1st Cir.1991). A district court may grant a preliminary injunction in a trademark case when it concludes that the plaintiff has demonstrated (1) that it will suffer irreparable injury if the injunction is not granted; (2) that any such injury outweighs any harm which granting the injunction would cause the defendant; (3) a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 220 (1989) (citing *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981)). The central issue in this case, as with most preliminary injunction trademark cases, *see id.*, is whether plaintiff demonstrated a likelihood of success on the merits.

■ Defendant's first contention is that the district court erred in finding a likelihood of success on the merits of plaintiff's claims because the mark "EQUINE TECHNOLOGIES" is "merely descriptive" of the horse hoof pads produced by plaintiff, and therefore invalid. *See* 15 U.S.C. § 1052(e)(1) (proscribing registration of merely descriptive marks). While we think plaintiff's mark is "suggestive" of its product, we agree with the district court that the mark EQUINE TECHNOLOGIES is not "merely descriptive" of hoof pads for horses.[2]

■ "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1040 (D.C.Cir.1989) (citing *Stix Prods. Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y. 1968)). *See also Union Nat'l Bank of Texas (Laredo) v. Union Nat'l Bank of Texas (Austin)*, 909 F.2d 839, 844 (5th Cir.1990). Merely descriptive terms generally are not entitled to protection under trademark law "both because they are a poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature." *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir.1986).

■ In determining whether a particular mark is merely descriptive of a product, a reviewing court must consider the mark in its entirety, with a view toward "what the purchasing public would think when confronted with the mark as a whole." *In re Hutchinson Technology Inc.*, 852 F.2d 552, 552–54 (Fed.Cir.1988). The district court's determination that plaintiff's mark is not merely descriptive of its product is a finding of fact which we review only for clear error. *Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir.1993). The clear error hurdle is "quite high." *Id.* (citation omitted). Moreover, because plaintiff's mark has been registered by the PTO on the Principal Register, it is entitled to a legal presumption of validity. *See* 15 U.S.C. § 1115(a) (registration of mark on Principal Register "shall be

---

2. We have explained the significance of the classification of a mark as either "descriptive" or "suggestive."

A court's inquiry into whether a term merits trademark protection starts with the classification of that term along the spectrum of "distinctiveness." At one end of the spectrum there are generic terms that have passed into common usage to identify a product, such as aspirin, and can never be protected. In the middle there are so-called descriptive terms, such as a geographical term, which can be

protected, but only if it has acquired a "secondary meaning" by which consumers associate it with a particular product or source. At the other end of the spectrum, there are suggestive, arbitrary and fanciful terms that can be protected without proof of secondary meaning. These terms are considered "inherently distinctive."

*Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir.1993) (internal citations omitted).

prima facie evidence of the validity of the registered mark ... and of the registrant's right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate"). Section 1115(a) entitles the plaintiff to a presumption that its registered trademark is inherently distinctive, as opposed to merely descriptive. *See Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 161 (1st Cir. 1977) (federal registration "is prima facie evidence that such mark has become distinctive of the goods in commerce"); *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir.1986).[3] That said, we turn to the facts at issue in this case.

There is no dispute in this case that the term "equine" is descriptive of horses.[4] The question, however, is whether the mark, in its entirety, is merely descriptive of plaintiff's product—hoof pads for horses. Defendant's argument boils down to its contention that "[a] consumer (i.e., farrier or equine veterinarian) would naturally expect a company called EQUINE TECHNOLOGIES to make high-tech hoof pads for horses." Like the district court, we find this argument unsupported by case law, and lacking in basic common sense.

The district court concluded:

Plaintiff is likely to prevail on its claim that the mark is not merely descriptive because it does not immediately conjure up the thought of the subject goods. Simply hearing the name gives virtually no idea of the product except that it has to do with horses. Seeing the mark provides a better clue as it transforms the "u" into a horseshoe. However, the viewing public still does not know if the product is itself a horseshoe, or a horseshoe related product like a hoof pad, or if the enlarged "u" is simply a graphic technique to evoke the idea of horses.

The court's finding of non-descriptiveness is not clearly erroneous. The term "Equine Technologies" might reasonably be thought to suggest that the product to which it applies has to do with horses. The addition of the upturned "u" might also *suggest*, to the perceptive consumer, that it has do with hooves or horseshoes. But we think the mark clearly "requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of goods and services." *Union Nat'l Bank*, 909 F.2d 839, 844 (5th Cir.1990) (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir.1983)). The mark itself does not convey information about plaintiff's product or its intended consumers; rather, it requires imagination to connect the term "Equine Technologies" to hoof care products, in general, and to the plaintiff's product in particular. We find no error in the district court's holding that plaintiff's mark was not merely descriptive of its product.

■ Before moving on to defendant's argument concerning the likelihood of confusion between the two marks, we pause briefly to address defendant's contention that the district court applied the wrong legal standard in analyzing the "merely descriptive" question. Defendant maintains that the district court incorrectly analyzed only the question of whether the mark immediately describes the actual product, and therefore implicitly rejected the concept that a trademark may be merely descriptive if it describes the intended purpose, function or use of the goods, the class of user of the goods, or desirable characteristics of the goods. *See* 1 J. McCarthy, Trademarks and Unfair Competition, § 11.5 (1994). The problem with this argument is that defendant consistently argued to the district court that plaintiff's mark was invalid precisely because it merely described plaintiff's product; i.e., hoof pads

---

**3.** Defendant argues that plaintiff's mark is somehow not entitled to this presumption because plaintiff's first application for trademark protection was rejected. Defendant seems to ignore the fact that plaintiff, as it was entitled, amended its application and its mark was subsequently placed on the registry by the PTO. Plaintiff's mark is therefore fully entitled to the presumption of validity.

**4.** When registering its mark with the PTO, plaintiff disclaimed any exclusive rights to the term "EQUINE" because of its descriptive nature. As plaintiff correctly points out, trademarks may properly incorporate descriptive terms for a non-descriptive whole.

for horses. The district court was therefore responding to defendant's specific contention. Defendant is not entitled to raise arguments on appeal that it failed to present to the district court. *See Boston Beer*, 9 F.3d at 180 ("a litigant's failure to explicitly raise an issue before the district court forecloses that party from raising the issue for the first time on appeal") (citing *McCoy v. Massachusetts Inst. of Technology*, 950 F.2d 13, 22 (1st Cir.1981), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992)). We therefore treat these new arguments as waived. *See id.* at 181.

▮ Defendant's second contention is that the district court erred in finding a likelihood of confusion between the two marks. "Once the determination has been made that a term is entitled to trademark protection, the pivotal inquiry becomes whether the allegedly infringing mark is likely to cause consumer confusion." *Boston Beer*, 9 F.3d at 180. *See* 15 U.S.C. § 1114(1) (prohibiting the use of a mark that is "likely to cause confusion, or to cause mistake, or to deceive"). In this circuit, this determination is based upon an analysis of eight separate factors, each of which requires its own factual findings. *See, e.g., Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 2–3 (1st Cir.1993); *DeCosta*, 981 F.2d at 606; *Keds Corp.*, 888 F.2d at 222. The determination as to whether a likelihood of confusion exists is a question of fact, which we review only for clear error. *See Aktiebolaget*, 999 F.2d at 3.

The findings made by the district court in this case are summarized below:

1) Similarity of Marks: The impressions made on the ear and the mind by the two marks are quite close, although, to the eye, the two marks are not so close. Based on the "total effect" of the marks, the similarity between the two marks is strong.

2) Similarity of Goods: Both products belong to the narrow category of hoof care products. Even assuming a price differential between the products, the similarity between the goods is strong. Moreover, even assum-

ing that the prime purchasers of the goods are sophisticated farriers and veterinarians, the goods are similar enough to create confusion.

3, 4, 5) Channels of Trade, Advertising, and Class of Prospective Purchasers:[5] The parties present their products at the same trade shows, and advertise in the same magazines, to the same target groups of consumers.

6) Evidence of Actual Confusion: Plaintiff made more than a minimal showing of actual confusion, citing several instances of consumer and promotional confusion between the two companies and their products.

7) Defendant's Intent in Adopting the Mark: The record is inadequate to make a finding with respect to defendant's intent in adopting the mark.

8) Strength of the Mark: Defendant failed to overcome the presumption of validity attached to registered marks. Plaintiff's mark is moderately strong.

The district court meticulously analyzed each of the eight factors, and it is only with respect to the court's analysis of the last factor that the defendant asserts error. Defendant contends that the district court erred in finding plaintiff's mark to be moderately strong, and asserts that this erroneous finding fatally infects the court's conclusion that there is a likelihood of confusion between the two products.

▮ We reject this argument for two reasons. First, the strength of a mark is but one of eight factors to be considered in analyzing the likelihood of confusion issue. *See Keds Corp.*, 888 F.2d at 222 ("No one factor is necessarily determinative, but each must be considered.") (citing *Volkswagenwerk AG v. Wheeler*, 814 F.2d 812, 817 (1st Cir.1987)). The district court's subsidiary findings that six of the seven other factors demonstrate a likelihood of confusion—the intent factor being inconclusive—are sufficient to sustain the

---

5. As is the custom in this circuit, the district court analyzed these factors together. *See Aktie-* *bolaget*, 999 F.2d at 3 n. 3 (collecting cases).

court's ultimate conclusion that such confusion exists.

██ Second, the district court's conclusion that plaintiff's mark was moderately strong is not clearly erroneous. In determining a trademark's relative strength, this court has examined "the length of time a mark has been used and the relative renown in its field; the strength of the mark in plaintiff's field of business; and the plaintiff's action in promoting the mark." *Keds Corp.,* 888 F.2d at 222 (quoting *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 32 (1st Cir. 1989)). In this case, the district court noted the following factors in support of its conclusion: (1) the mark has been in use for four years; (2) plaintiff has actively marketed goods with the mark affixed, including 74 print advertisements promoting the mark; (3) plaintiff has received favorable publicity in the horse world; (4) plaintiff has successfully compelled one infringing competitor to change its name; and (5) the PTO has rejected at least one attempt by a competitor to register a similar name. Moreover, the plaintiff's mark has been registered by the PTO, which provides additional support for the court's conclusion that the mark is moderately strong. *See DeCosta,* 981 F.2d at 606. These findings, which defendant has not challenged as erroneous, sufficiently support the court's conclusion that plaintiff's mark is moderately strong.

Finally, defendant contends that "the Court completely ignored the relevance of the fact that numerous companies in this industry use a combination of Equi, Equine, Eque, Eques and 'Technology.'" This assertion is belied by the record. The district court opinion expressly cites each of these examples, but notes that only one of those companies directly competes with plaintiff, and concludes that "its mark is not as similar, visually or aurally, as defendants' trademark." Defendant has not argued that this factual finding is clearly erroneous.

We have considered all of defendant's other arguments and find them without merit. The district court opinion in this case is detailed and comprehensive. The court carefully reviewed the evidence, made specific findings of fact which are supported by the record, and resolved the question of injunctive relief in accordance with the proper legal standard. The district court correctly found that it was likely that consumers would be confused by the two marks, and that plaintiff is therefore likely to succeed on the merits of its infringement claim. The court also correctly ruled that the other factors relevant to the issuance of a preliminary injunction weighed heavily in plaintiff's favor. We find no basis for disturbing the district court decision.

### CONCLUSION

For the reasons stated herein, the judgment of the district court is **affirmed.** Costs to appellee.