**PUBLIC SERVICE COMPANY OF NEW MEXICO, Plaintiff,**

v.

**NEXUS ENERGY SOFTWARE, INC., Defendant.**

No. CIV.A. 98–12589–EFH.

United States District Court, D. Massachusetts.

Feb. 24, 1999.

Douglas R. Wolf, Wolf, Greenfield & Sacks, P.C., Boston, MA, Jonathan Hudis, Brian D. Anderson, Oblon, Spivak, McClelland, Maier & Neustadt, P.C., Arlington, VA, Matthew B. Lowrie, Wolf, Greenfield & Sacks, P.C., Boston, MA, for Public Service Company of New Mexico, Plaintiff.

Daniel J. Gleason, Carl M. DeFranco, Jr., Nutter, McClennen & Fish, Boston, MA, for Nexus Energy Software, Inc., Defendant.

## MEMORANDUM & ORDER

HARRINGTON, District Judge.

This trademark action is before the Court on the Plaintiff's Motion for a Preliminary Injunction. Plaintiff Public Service Company of New Mexico ["PNM"] has sued Nexus Energy Software, Inc. ["Nexus"] because of Nexus' use of the mark "*e* NERGYplace" and the domain name "energyplace.com." PNM claims that Nexus' use of these marks infringes its service mark "Energy Place," Federal Registration No. 2,181,294.

PNM is a publicly traded utility company operating in New Mexico. In 1996, PNM developed its Energy Place information service. This service is a consumer hotline that, among other things, directs customers to vendors who supply energy efficient products. PNM's registration of "Energy Place" states that the use of the mark is for:

> ... providing information services regarding the most efficient and cost-effective use of energy resources; providing energy audits for industrial, commercial, and residential consumers; energy consulting services; managing energy consumption for industrial and commercial consumers; promoting public awareness for the need for more efficient and cost-effective use of energy resources ...

Energy Place operates on the internet, where it has received inquiries from throughout the United States. In addition to its internet site, Energy Place advertises through television, radio, and the mail.

Nexus is a Massachusetts company founded in 1997. In April, 1998, Nexus began operation of its internet site, which offers consumers various services to analyze their energy needs. Nexus uses the mark "*e* NERGYplace" in connection with its site. Shortly thereafter, Nexus sought trademark protection for its "*e* NERGYplace" mark. In July, 1998, PNM notified Nexus of its own mark "Energy Place"; one month later the Patent and Trademark Office ["PTO"] denied Nexus trademark application citing the likelihood of confusion with PNM's mark. After settlement negotiations between the parties broke down, PNM filed this suit.

■ To obtain a preliminary injunction, PNM must establish four elements: (1) that it is likely to succeed on the merits at trial; (2) that it will suffer irreparable harm if the preliminary injunction is not granted; (3) that the balance of hardships favors PNM; and (4) that a preliminary injunction is in the public interest. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir.1996). The gravamen of this motion, as with most trademark infringement prelim-

inary injunctions, is whether PNM has shown a likelihood of success on the merits. To determine whether the plaintiff is likely to prevail on its claim of trademark infringement, the Court must determine: (1) whether the trademark is valid; and (2) whether Nexus has infringed the mark. The Court finds that PNM is likely to succeed on both points.

■ First, the Court finds that Nexus is unlikely to succeed on its claim that PNM's trademark is invalid because it is generic or descriptive and therefore rules that the trademark is valid. Terms eligible for trademark protection lie on a spectrum of distinctiveness: on one end of the spectrum are generic terms that are not eligible for trademark protection; in the middle of the spectrum are descriptive terms that can be protected only if they have acquired secondary meaning; at the far end of the spectrum are suggestive, arbitrary, or fanciful terms that are eligible for trademark without proof of secondary meaning. *See Boston Beer Co. v. Slesar Bros. Brewing Co.,* 9 F.3d 175, 180 (1st Cir.1993). Nexus argues that the term "Energy Place" is generic or, at most, descriptive.

■ The Court's analysis begins with the fact that PNM's mark is registered, and, thus, it is entitled to a presumption of validity. *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark ..."). This presumption "entitles the plaintiff to a presumption that its registered trademark is not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning." *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 936 (7th Cir.1986). Nexus can rebut this presumption by coming forward with evidence showing that the term is a generic name for goods or services or that the term is descriptive and has not acquired secondary meaning.

■ Nexus has produced no evidence showing that "Energy Place" is a generic term for a consumer service relating to energy information, products, and services. The

question of whether a term is generic is one of fact: do consumers associate the term with the product rather than the brand of a product? *Thomas & Betts Corp. v. Panduit Corp.,* 138 F.3d 277, 300, 301 (7th Cir.1998). Nexus' numerous exhibits indicate that many power companies have mailing addresses that include the term "Energy Place" and that some corporations have used energy place in their name, but this does not demonstrate that "Energy Place" is the generic term used by consumers for sites where they can find information regarding energy information, products, and services.

Having found that the term "Energy Place" is not a generic name for sites where consumers can find information regarding energy information, products, and services, the Court must still address whether the term is merely "descriptive" of the product—in which case the trademark would be invalid without a showing of secondary meaning—or whether the term is suggestive—in which case the trademark is valid without any showing of secondary meaning. The Court finds that the term "Energy Place" is "suggestive," and, thus, that the trademark is valid.

■ "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Equine Technologies, Inc. v. Equitechnology, Inc.,* 68 F.3d 542, 544 (1st Cir.1995) (citations omitted). Trademark law limits the protection accorded merely descriptive terms because they are a poor means of distinguishing between competing services and because descriptive terms are often necessary for a company to describe its services to consumers. *See id.* Given the wealth of synonyms in the English language, such concerns are reduced when the term is merely suggestive. *See Aluminum Fabricating Co. of Pittsburgh v. Season–All Window Corp.,* 259 F.2d 314, 317 (2nd Cir.1958).

■ Although the term "Energy Place" suggests that it is a place related to energy, it does not covey an immediate idea of the

ingredients, qualities, or characteristics of the services PNM offers:

1. providing information services regarding the most efficient and cost-effective use of energy resources;

2. providing energy audits for industrial, commercial, and residential consumers;

3. energy consulting services; managing energy consumption for industrial and commercial consumers; and

4. promoting public awareness for the need for more efficient and cost-effective use of energy resources.

Moreover, competitors are left with a variety of terms to describe their competing services, one example being energy information services. Consequently, the Court finds that the term "Energy Place" is not "merely descriptive," and that the trademark is valid.

▮▮▮ The Court also finds that Nexus' use of the mark "*e* NERGYplace" and the domain name "energyplace.com" likely infringes PNM's trademark. The essential element of a trademark infringement claim is likelihood of confusion. In assessing likelihood of confusion, the following factors guide the Court: the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendant's intent in adopting its mark; and the strength of the plaintiff's mark. *See Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 817 (1st Cir.1987).

In analyzing the above factors the Court concludes that on balance they support a finding of likelihood of confusion:

1. Similarity of Marks: The two marks look virtually identical and sound identical.

2. Similarity of Services: Although there are some differences in the services offered, both parties offer consumers information relating to energy services.

3. Channels of Trade: Both parties compete on the internet. Both parties are trying to lure the same customers, although there are some differences in the services offered and in the geographical regions served—PNM serves primarily New Mexico, while Nexus serves primarily customers in states that have deregulated their energy supplier (generally the Northeast).

4. Nexus' Intent in Adopting its Mark: Nexus apparently adopted its mark with no knowledge of PNM's mark; it has, however, knowingly continued to use PNM's mark since July of 1998.

5. Evidence of Actual Confusion: PNM demonstrated that consumers trying to reach PNM's "Energy Place" site on the internet are likely to be directed to a page that initially displays the term "*e* NERGYplace" that then fades to "*e* NERGYguide." Furthermore, information on this page tells consumers that the new name for "*e* NERGYplace" is "*e* NERGYguide."

6. Strength of PNM's Mark: PNM's mark is sufficiently distinct to warrant protection—it is registered, it has been used for over two years, and PNM has invested in various types of advertising of its mark, thus, creating some good will.

In balance, the Court finds that it is reasonably probable that PNM would succeed in proving a likelihood of confusion between its mark and Nexus' mark.

In addition to finding that PNM is likely to succeed on the merits of its trademark claim, the Court also finds that PNM satisfies the other conditions necessary for issuance of a preliminary injunction. Nexus' continuing use of PNM's mark will cause irreparable harm to the goodwill and reputation that PNM has developed in its mark. This harm to PNM outweighs any harm to Nexus, as is evidenced by the fact that PNM has voluntarily changed its "*e* NERGYplace" mark to "*e* NERGYguide." Finally, eliminating confusion in the marketplace and providing protection for an established mark furthers the public interest.

Accordingly, the Court grants Plaintiff's Motion for Preliminary Injunction and orders the defendant to cease using the terms "energy place" and "energyplace"—including all variants of the terms that differ only in capitalization or italics—and the domain

name "energyplace.com" within thirty (30) days of this Order.

SO ORDERED.