**TRADE MEDIA HOLDINGS LIMITED, Plaintiff,**

v.

**HUANG & ASSOCIATES, Shuo Cai Huang, Asiansource, Inc. a/k/a Asiatrading Group, Inc., Defendants.**

**No. Civ. A. 99–1438 (WHW).**

United States District Court, D. New Jersey.

Nov. 27, 2000.

Elizabeth Sher, Michael Simio, Pitney, Hardin, Kipp & Szuch LLP, Morristown, NJ, for Plaintiff Trade Media Holdings Ltd.

Christopher M. Manganello, Law Office of Christopher Manganello, Pitman, NJ, for Defendants Shuo Cai Huang and Huang & Associates.

## OPINION

WALLS, District Judge.

Having brought the present action against defendants alleging trademark infringement under Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), unfair competition and false designation of origin under the New Jersey common law and Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and trademark dilution under Section 43 of the Lanham Act, 15 U.S.C. § 1125(c), Plaintiff, Trade Media Holdings Limited ("Trade Media"), moves for partial summary judgment against defendants

Huang & Associates ("H & A") and Shuo Cai Huang ("Huang"), and also requests costs and fees against defendants under Section 35(a) of the Lanham Act.

### Factual and Procedural Background

Trade Media has owned the mark ASIAN SOURCES® since January 1993 and has filed with the Patent and Trademark Office documents necessary to establish its mark as "incontestable." It publishes an online version of its magazine at *www.asiansources.com*, which provides information on Asian-made products available for export and import. H & A is under exclusive control of Huang. H & A registered the domain name *www.asiansource.com* some time before October 7, 1998. That site offers and provides services relating to Asian-made consumer products available for export.

In a March 25, 1998 letter, Trade Media notified H & A that Trade Media had exclusive rights to the ASIAN SOURCES mark. Huang incorporated the New Jersey corporation, Asiansource, Inc. on April 2, 1998 and was listed as the incorporator and sole member of the board of directors. On or about April 4, 1998, he wrote to Lynn Rzonca, Esq., Trade Media's attorney, informing her that Asiansource would shut down its website. In October, a second letter was sent to Huang and H & A indicating that the site was still running. On March 29, 1999, Trade Media filed the present complaint against Huang and H & A, which alleges (1) trademark infringement under Section 32(a) of the Lanham Act; (2) unfair competition and use of a false designation of origin under Section 43(a) of the Lanham Act; (3) trademark dilution under Section 43(c) of the Lanham Act; and (4) unfair competition under New Jersey common law.

Huang filed a *pro se* answer on April 29, 1999, wherein he asserted that the domain name was derived from the name of Asiansource, Inc. and that Asiansource was in a different business, import and export, from that of Trade Media, which "publishes

magazines." On June 18, 1999, Huang dissolved Asiansource, Inc. Between June 4, 1999, the date of the initial conference with the Magistrate Judge, and June 12, 1999, Huang transferred the domain name *www.asiansource.com* to AsiaTrading Group, Inc., which, at the July 16, 1999 hearing before the Magistrate Judge, Huang admitted to be a Chinese corporation.[1] Huang denies that these two acts were done intentionally to conceal his involvement in *www.asiansource.com*.

Huang is the president and CEO of Pan State Health Products, Inc, ("Pan State"), located at 666 Plainsboro Road, Princeton NJ. Pan State had been located at 301 North Harrison St., Princeton, NJ prior to September 17, 1999. After Asiansource was dissolved, the *www.asiansource.com* website listed Huang's 301 North Harrison Street address as the contact address. Trade Media wrote to AsiaTrading Group on September 27, 1999 to inform that company of its exclusive rights to the ASIAN SOURCES mark and requested transfer of that domain name. After this time, the contact address on *www.asiansource.com* was changed to 666 Plainsboro Road, Princeton NJ (Huang's current business address). On November 18, 1999, Trade Media sent another letter to Huang and Asia Trading at 666 Plainsboro Road. Plaintiff has furnished a computer printout from the *www.asiansource.com* web page dated December 3, 1999, that listed Huang's business address as the contact address. Some time after December 3, 1999, Huang's business address was removed from the site.

Huang and H & A contend that (1) Huang and H & A originally registered the domain name on behalf of their client, Asiansource, Inc; and (2) neither defendant used the domain name "in commerce" but merely "provided technical and administrative support for [Asiansource's] web-site." Defendants' Counter–Statement of Disputed Facts, at ¶¶ 1–2.

Plaintiff now moves for partial summary judgment against defendants Huang and H & A, and also requests costs and attorneys' fees under Section 35(a) of the Lanham Act.

### DISCUSSION

### I. Summary Judgment Standard

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). At the summary judgment stage, the role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, the court must construe the facts and inferences in the light most favorable to the nonmoving party. *See Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986); *Wahl v. Rexnord, Inc.,* 624 F.2d 1169, 1181 (3d Cir.1980). A genuine issue of material fact exists only if the evidence presented would enable a reasonable jury to return a verdict for the nonmovant. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *See id.* at 249, 106 S.Ct. 2505. "Once the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

---

**1.** Plaintiff eventually named AsiaTrading Group Inc. as a defendant in its Amended Complaint.

The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Sound Ship Bldg. Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 99 (3d Cir.1976). In trademark infringement and unfair competition cases, "courts in the Circuit have not been hesitant to grant summary judgment where no reasonable juror could find that a likelihood of confusion existed." *American Cyanamid Co. v. Nutraceutical Corp.*, 54 F.Supp.2d 379, 384 (D.N.J.1999).

## II. *Analysis*

### A. *Trademark Infringement*

■ To prevail on a claim for trademark infringement under Section 32(1)(a) of the Lanham Act, 15 U.S.C. Section 1114(1)(a), a plaintiff must establish that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services. *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir.1994) (citing *Ford Motor Co. v. Summit Motor Products, Inc.* 930 F.2d 277, 291 (3d Cir.1991)); *Jews for Jesus v. Brodsky*, 993 F.Supp. 282, 294–95 (D.N.J.1998). The first two of these elements (validity, protectability and ownership) are proved when the mark was federally registered and has become "incontestable" under the Lanham Act, 15 U.S.C. §§ 1058, 1065. *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir.1994) (citing *Ford Motor Co.*, 930 F.2d at 291; *Jews for Jesus*, 993 F.Supp. at 295). "A trademark is incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there as been no adverse decision concerning the registrant's ownership or right to registration." *Fisons*, 30 F.3d at 472 n. 7; *Jews for Jesus*, 993 F.Supp. at 295. A likelihood of confusion exists "when the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Fisons*, 30 F.3d at 472 (quoting *Dranoff–Perlstein Assoc. v. Sklar*, 967 F.2d 852, 862 (3d Cir.1992)) (internal quotation marks omitted). It is not necessary to show actual confusion, only a likelihood of confusion. *Fisons*, 30 F.3d at 472, citing *Ford Motor Co.*, 930 F.2d at 292.

■ The analysis depends on whether the alleged infringer and plaintiff are in direct competition. If they are not, the similarity of the marks is only one of several factors the courts must examine; however, if the two are in direct competition, then "the court need rarely look beyond the mark itself." *Fisons*, quoting *Interpace Corp. v. Lapp*, 721 F.2d 460, 462 (3d Cir.1983). In that situation, the court's analysis is whether the marks are "confusingly similar." *Id.*, quoting *Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1063 (3d Cir.1991). When the plaintiff and defendant are in direct competition, the court must then determine if the mark is "inherently distinctive or has acquired sufficient secondary meaning to make it distinctive, and compare it against the challenged mark." *Interpace*, 721 F.2d at 462; *see also Prince Manufacturing, Inc. v. Bard Intern. Associates, Inc.*, No. 88–3816, 1988 WL 142407 (D.N.J. Dec.22, 1988). A word is "inherently distinctive" if it "communicates a unique meaning." *Prince*, 1988 WL 142407 at *3. The five levels of "distinctiveness" under trademark law are (from least to most distinctive): "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful." *See Fisons*, 30 F.3d at 478. According to *Fisons*, the latter three categories are considered "inherently distinctive." When the court determines that the trademark is not "inherently distinctive," the court must proceed to determine if the mark has acquired a secondary meaning such that it is distinc-

tive. A trademark develops secondary meaning "'when consumers seeing the trademark assume that the product it labels comes from a particular source.'" *RPF Holding Corp. v. Bedrooms Plus,* No. Civ. 88–5126, 1988 WL 145361, *4 (D.N.J. Dec. 28, 1988), quoting *Interpace,* 721 F.2d at 462. The test for "secondary meaning" is "identical to the likelihood-of-confusion test." *Id.*

Here, plaintiff has shown the first two elements of infringement, namely (1) validity and protectability and (2) ownership, by supplying to the U.S. Patent and Trademark Office ("PTO") the necessary affidavits to establish incontestability under 15 U.S.C. §§ 1058 and 1065. Defendants Huang and H & A do not contest this. The only issue is whether there exists a likelihood of confusion.

■ First, this Court must determine whether first this case involves competing goods.[2] Defense counsel claims that plaintiff's website deals in services while the *www.asiansource.com* site deals in goods. This argument ignores defendant's admission that the *www.asiansource.com* web site "provides services relating to Asian-made consumer products available for export." *See* Defendant's Statement of Facts, ¶ 5. It is also a distinction without a difference, because both sites provide similar goods and services. A comparison of printouts from the two web sites (*www.asiansource.com* and *www.asian-sources.com*) reveals that the two web sites compete. As example, both sites list services for buyers and sellers. Both sites offer products including electronics, machinery, telecommunications products, jewelry, watches, gifts, and other products. Moreover, at oral argument, defense counsel conceded that any reasonable consumer

who examined both web pages would conclude that the two sites offer the same services.

■ Because the plaintiff's use of its mark on its website and the alleged infringing use involve competing goods and services, the court must determine whether the mark ASIAN SOURCES® is inherently distinctive, that is, whether it can be defined as suggestive, arbitrary or fanciful. This Court has previously observed that assessing a mark's distinctiveness is not an "exact science" and that subtle distinctions among these categories can be elusive. *Harlem Wizards Entertainment Basketball, Inc. v. NBA Properties, Inc.,* 952 F.Supp. 1084, 1093 (D.N.J. 1997), citing *Banff Ltd. v. Federated Department Stores,* 841 F.2d 486, 489 (2d Cir.1988). Neither plaintiff nor defendants have addressed this issue in their briefs. Notwithstanding, this court finds that plaintiff's mark is descriptive rather than suggestive, arbitrary or fanciful, because it does not communicate any unique meaning. Because the Court finds that the mark ASIAN SOURCES is not inherently distinctive, it turns to the question of whether a likelihood of confusion exists between both parties' use of the mark.

■ Plaintiff has the burden to establish that defendants' use of its ASIAN SOURCES® mark will create a likelihood of confusion among consumers. The showing of proof necessary for a plaintiff to prevail depends upon whether the goods or services offered by the trademark owner and alleged infringer are competitive or noncompetitive. *Fisons,* 30 F.3d at 472–73; *Harlem Wizards,* 952 F.Supp. at 1094. If the action involves competing goods, "the court need rarely look beyond the

---

**2.** Counsel for defendants contend that since Huang (who allegedly is in the business of providing technical and administrative assistance to web sites) is not directly in competition with plaintiff, then only defendant Asia-Trading Group Inc. could be infringing plaintiff's mark and defendants Huang and H & A cannot. This argument is unavailing

because the court looks to the allegedly infringing use of the mark. As discussed below, it is undisputed that defendants were directly involved in infringing use of the ASIAN SOURCES mark (the operation of the *www.asiansource.com* web site), even if only as an agent acting on behalf of a client.

mark itself." *Interpace*, 721 F.2d at 462. In those cases, the court simply analyzes whether the similarity of the marks engenders confusion. *Fisons*, 30 F.3d at 472–73; *Country Floors*, 930 F.2d at 1063. Where the goods are non-competing, the similarity of the marks is only one of a number of factors the court examines to determine the "likelihood of confusion." *Fisons*, 30 F.3d at 473. If the goods or services are noncompeting,

> the court must look beyond the trademark to the nature of the products themselves, and to the context in which they are marketed and sold. The closer the relationship between the products, and the more similar their sale contexts, the greater the likelihood of confusion. Once a trademark owner demonstrates the likelihood of confusion, it is entitled to injunctive relief.

*Id.* (quoting *Lapp*, 721 F.2d at 462 (citations omitted)). As discussed, the two web sites are in direct competition.

Likelihood of confusion exists if the consuming public assumes upon viewing a mark that the products or services represented by the mark are associated with a different product or services represented by a similar mark. *See Harlem Wizards*, 952 F.Supp. at 1094, citing 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 2301[1] (1992). The Third Circuit has identified ten factors to be considered in determining whether a likelihood of confusion exists in the marketplace regarding the source of a product or service. *Fisons*, 30 F.3d at 473–74; *Dranoff–Perlstein Associates v. Sklar*, 967 F.2d 852, 862–63 (3d Cir.1992); *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 293 (3d Cir.), *cert. denied sub nom., Altran Corp. v. Ford Motor Co.*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991); *Lapp*, 721 F.2d at 463; *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir.1978). They are:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods [or services], though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties sales efforts are the same;

(9) the relationship of the goods [or services] in the minds of consumers because of similarity of function; and

(10) other facts suggesting that the consuming public might expect the defendant's market, or that he is likely to expand into that market.

*Lapp*, 721 F.2d at 463 (citing *Scott Paper Co.*, 589 F.2d at 1229); *Wizards*, 952 F.Supp. at 1094.

### 1. Degree of Similarity Between the Marks

■ This Court now addresses the similarity between the two marks, because this factor is the most dispositive of the existence of any likelihood of confusion when the goods and services offered by the plaintiff and defendant are competitive. *Interpace*, 721 F.2d at 462; *Fisons*, 30 F.3d at 472–73; *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 195 (3d Cir.1990). In considering the similarity between the two marks, the court "must compare the appearance, sound and meaning of the marks, as well as the manner in which they are used." *Taj Mahal Enterprises, Ltd. v. Trump*, 745 F.Supp. 240, 247 (D.N.J.1990) (citing *Caesars World, Inc. v. Caesar's Palace*, 490 F.Supp. 818, 824 (D.N.J.1980)). When "making such a com-

parison, the relevant factor is 'the overall impression created by the mark as a whole rather than simply comparing the individual features of the marks.'" *Id.* (quoting *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 975 (11th Cir.1983)) Marks "are confusingly similar if ordinary consumers would likely conclude that ... [the products or services] share a common source, affiliation, connection or sponsorship." *Fisons,* 30 F.3d at 477. If two marks create essentially the same overall impression, it is highly probable that the two marks are confusingly similar. *See id.* at 477–79; *Ford Motor Co.,* 930 F.2d at 293; *Opticians,* 920 F.2d at 195. The Third Circuit in *Opticians* explained:

> Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement.

*Id.* at 194–95, quoting 2 McCarthy, Section 23:3.

This Court finds that the evidence establishes that defendants used the ASIAN SOURCES mark in connection with the domain name for the *www.asiansource.com* web site. The court further finds that the services offered by the two web sites are virtually identical. Use of an identical mark for purposes of a domain name has been held to constitute the identical mark. *See Public Serv. Co. v. Nexus Energy Software, Inc.,* 36 F.Supp.2d 436, 439 (D.Mass.1999) ("energyplace.com" and "Energy Place" were virtually identical); *Minnesota Mining and Mfg. Co. v. Taylor,* 21 F.Supp.2d 1003, 1005 (D.Minn.1998) ("post-it.com" and "Post–It" were identical); *Planned Parenthood Federation of America, Inc. v. Bucci,* No. 97 Civ. 0629(KMW), 1997 WL 133313, at *8 (S.D.N.Y. March 24, 1997) ("plannedparenthood.com" and "Planned Parenthood"

were essentially identical), *aff'd,* 152 F.3d 920 (2d Cir.), *cert. denied,* 525 U.S. 834, 119 S.Ct. 90, 142 L.Ed.2d 71 (1998). Moreover, the likelihood of confusion is high when, as here, the plaintiff has used its mark to establish a domain name with virtually the identical address as defendant's allegedly infringing use. There can be no doubt that but for the presence or absence of an "s", the allegedly infringing mark here is identical to plaintiff's mark. Indeed, defense counsel at oral argument admitted that he did not dispute that, as spelled, the two marks are "confusingly similar." This factor weighs heavily in favor of a finding of a likelihood of confusion.

### 2. *Channels of Trade and Target Audience*

The similarities between the channels of trade and target audiences of the two web sites are closely related and therefore, the Court considers these two factors together. The channels of trade-web sites located on the Internet-are identical. Both *www.asiansource.com* and *www.asiansources.com* are web sites which offer services with regard to Asian-made goods.[3] The domain names are virtually identical. The target audience of both web sites is the same: It is indisputable that the target audience of the *www.asiansource.com* web site is the same as that of the plaintiff's web site. The two sites offer similar services: Each has a link for services for buyers and services for sellers. Each offers services for import or export of many of the same items. The court finds that plaintiff has established that the channels of trade and target audience of the two sites are identical. These factors favor a finding of a likelihood of confusion.

### 3. *Factors Indicative of the Care and Attention Expected of Consumers*

The court has before it no specific evidence of to the price of goods offered on

---

**3.** Plaintiff presented evidence that the *www.asiansource.com* website now simply links automatically to the *www.asiatrad-* *ing.com* website. The Asia Trading website is identical to the site that was originally found at *www.asiansource.com.*

each of the respective web sites. However, the Court notes that given the similarity of the goods offered and the identical channels of trade, the prices may more likely than not be similar and the goods more likely than not be of similar quality. Because of the similarities of channel of trade and target audience, the Court finds that consumers are very likely to "surf" the *www.asiansource.com* web site and expect to purchase or sell goods through the *www.asiansources.com* web site. Thus, this factor favors a finding of likelihood of confusion.

### 4. Intent of the Defendant in Adopting the Mark

Defendant Huang asserts in his affidavit that he did not intend to infringe when he adopted plaintiff's mark in registering the domain name *www.asiansource.com*. Notwithstanding this bald assertion, defendant's intent is plainly evident by his actions after registering the mark. He does not deny that after receiving notice of his alleged infringement, he incorporated as the sole incorporator and director the company Asiansource Inc. in New Jersey. Despite his reassurances in his April 1998 letter to Lynn Rzonca, Esq., that Asiansource would be shutting down its web site, the web site remained in operation, registered *in his own name*, for over one year after he had made such assurances. Indeed, even after being named as a defendant in the present lawsuit, rather than either (a) shutting down the web site as promised or (b) transferring the domain name to the plaintiff, defendant instead transferred the domain name to a third party, AsiaTrading Group Inc., in China. The Court finds these actions and representations highly probative of Huang's intent to infringe.[4]

4. Furthermore, notwithstanding Huang's insistence that he has never acted as anything other than as an agent to Asiansource Inc., this factor is completely irrelevant to his intent. Any agency relationship between Mr. Huang and Asiansource is relevant to the allocation of liability as between Huang and

### 5. Evidence of Actual Confusion/ Length of Time Without Actual Confusion

It is well settled that in a trademark infringement action, a plaintiff need not present evidence of actual confusion and need only show that a likelihood of confusion exists. *Ford Motor Co.*, 930 F.2d at 292. Even if defendants were able to adduce proof that no actual confusion has ever arisen out of the use of plaintiff's mark in the *www.asiansource.com* web site, this Court would still conclude that the evidence overwhelmingly establishes a likelihood of confusion.

### 6. Strength of the ASIAN SOURCES Mark

Defendant is correct that there is no evidence of the strength of plaintiff's mark. The court finds, however, that this factor alone could not defeat the overwhelming evidence plaintiff has already demonstrated in support of a strong likelihood of confusion.

### 7. Likelihood of Expansion/ Public's Expectation of Similar Services from Plaintiff

Plaintiff is already active in the market in which the infringing site actively participates. The evidence is overwhelming that plaintiff's web site offers identical or nearly identical services to those offered by *www.asiansource.com*. These factors weigh in favor of a finding of a high likelihood of confusion.

The unchallenged evidence convincingly establishes that the use of the ASIAN SOURCES mark in the *www.asiansource.com* website (and the current link to the *www.asiatrading.com* website) cre-

Asiansource (such as any indemnification to which Huang may be entitled). He cannot now disavow responsibility for his own actions merely by asserting that he was not acting on his own behalf but rather acting on behalf of another entity as its agent.

ates a high likelihood of confusion. It follows then that plaintiff has established as a matter of law infringement of the trademark ASIAN SOURCES® by the defendants.

## B. *Unfair Competition and False Designation of Origin Under the Lanham Act and New Jersey Common Law*

■ To establish a *prima facie* case of unfair competition under the Lanham Act, Section 43(a)(1)(A), plaintiff must prove:

(1) Use of a word, term, name, symbol, devise or false designation of origin;

(2) in interstate commerce;

(3) in connection with goods or services;

(4) which is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of defendant's goods or services by another person; and

(5) likelihood of damage to the plaintiff.

*See Jews for Jesus*, 993 F.Supp. at 309. The test is essentially the same as that for trademark infringement under Section 32 and focuses on whether there is a "likelihood of confusion between the marks." *Id.* at 309, citing *AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994), *cert. denied*, 514 U.S. 1103, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995).

■ As discussed, defendant used plaintiff's mark in interstate commerce. The "use in commerce" requirement was meant to be a jurisdictional predicate with a "sweeping reach." *Planned Parenthood*, 1997 WL 133313 at *3. Using a domain name to operate a website is a "use in commerce" because it affects a plaintiff's ability to offer services. *Id.* "The nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's "in commerce" requirement." *Id.*, quoting *Intermatic*, 947 F.Supp. at 1239. Huang contends that his actions of merely registering the domain name are insufficient to establish that he engaged in a "commercial use." But he did more than merely register a domain name: He registered the domain name and entered into a contract to be compensated by Asiansource Inc. for this service. He incorporated the company Asiansource Inc. in New Jersey and represented to the plaintiff on behalf of Asiansource that the company would shut down that website, thereby inducing inaction of the plaintiff. Despite his assurances, the web site remained in operation, registered under his name, for more than one year. He admits to providing technical and administrative support for the *www.asiansource.com* web site. Furthermore, there is ample evidence that he was listed as the contact person for questions concerning the web site (or his address was listed as the contact address) until at least December 3, 1999. His was undoubtedly an active involvement in running the website, even if on behalf of a client, as he contends. All these acts define defendants' use of the ASIAN SOURCES mark as a use in commerce.

■ Plaintiff has also demonstrated that the defendants' actions with the ASIAN SOURCES mark was a use "in connection with goods and services," because defendant helped to maintain the web site which offered goods and services. Defendant's actions were likely to have an effect on plaintiff's ability to offer its goods and services because the *www.asiansource.com* site prevented prospective customers for plaintiff from reaching that site and promotes its own goods and services. *See Jews for Jesus*, 993 F.Supp. at 309, quoting *Planned Parenthood*, 1997 WL 133313, at *4. As the court in *Jews for Jesus* discussed,

Defendant's use of plaintiff's mark is "in connection with the distribution of services" because it is likely to prevent some Internet users from reaching plaintiff's own Internet web site. Prospective users of plaintiff's services who mistakenly access defendant's web site

may fail to continue to search for plaintiff's own home page, due to anger, frustration, or the belief that the plaintiff's home page does not exist. . . . Therefore, defendant's action in appropriating plaintiff's mark has a connection to plaintiff's distribution of its services.

993 F.Supp. at 309, quoting *Planned Parenthood*, 1997 WL 133313, at *4 (discussing "in connection with goods or services" requirement in context of Section 1114 claim). In other words, the mere existence of *www.asiansource.com* has the potential to lure customers who type the plaintiff's domain name incorrectly into their search engine or address field, thereby preventing such customers from purchasing goods and services on plaintiff's web site.

Plaintiff has also established a likelihood of confusion, as discussed, because the two marks are virtually identical as a matter of law. Finally, although defendants contend that plaintiff has not presented any evidence of actual damages, all that is necessary is a showing of a likelihood of damages. When the plaintiff has established a likelihood of confusion, injury follows as a matter of course. *Jews for Jesus*, 993 F.Supp. at 311 (granting preliminary injunction on the basis that a finding of likelihood of confusion established irreparable injury), citing *Opticians*, 920 F.2d at 196.

## C. *Trademark Dilution*

█ Under Section 1125(c) of the Lanham Act (the "anti-dilution provision,") an owner of a "famous mark" is entitled to an injunction against another person's "commercial use in commerce of a mark or trade name if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. Section 1125(c); *see also Planned Parenthood*, 1997 WL 133313 at *5. "Dilution" is "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. *See also, Intermatic Incorp. v. Toeppen*, 947 F.Supp. 1227, 1238 (N.D.Ill. 1996).

While this court has before it some evidence that the existence of the *www.asiansource.com* web site has the potential to lessen the capacity of plaintiff's mark to identify and distinguish its goods and/or services, this court need not inquire at the present time whether plaintiff has established dilution as a matter of law. This is because plaintiff has failed to establish as a matter of law that its ASIAN SOURCES mark is "famous" within the meaning of Section 1125(c). Plaintiff asserts:

> Trade Media has been using the ASIAN SOURCES mark world-wide for nearly thirty years. During this time Trade Media has expended vast amounts of resources in marketing the ASIAN SOURCES name, and has achieved widespread recognition for the ASIAN SOURCES mark both within the import/export business and from consumers world-wide. Most significantly, in connection with its use on Trade Media's website "www.asiansources.com," the ASIAN SOURCES mark has become associated with a market leader in the business of importing and exporting Asian-made goods via the Internet. As such the ASIAN SOURCES mark has acquired distinctiveness in that it has become well and favorably known as an indicator of goods of the highest quality.

Plaintiff's Brief, at p. 19. Although in its brief, plaintiff has asserted summarily facts, which, if true, may establish that its mark is famous, the court can not rely on facts asserted outside the pleadings, affidavits and other evidence adduced to determine a motion for summary judgment. Plaintiff has failed to present evidence that its mark is famous. This portion of plaintiff's summary judgment motion is denied without prejudice.

**244**

### D. *Motion for Costs and Fees*

 Section 35(a) of the Lanham Act provides:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or a willful violation under section 43(c), shall have been established in any civil action arising under this Act, the plaintiff shall be entitled ... subject to the principles of equity, to recover ... the costs of the action.... The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a). Expenses which are taxable as costs under 28 U.S.C. § 1920 are recoverable as of right by the infringed party. *See* 5 McCarthy on Trademarks Section 30:107. However, the Court has discretionary power under the Lanham Act to award reasonable attorneys fees in "exceptional cases" only. *See Suncoast Tours, Inc. v. Lambert Group, Inc.*, No. Civ. A. 98–5627,1999 WL 103463, at *6 (D.N.J. Nov. 10, 1999) ("exceptional cases" include those where there has been "culpable conduct on the part of the losing party, such as bad faith, fraud, malice or knowing infringement"). Defendant has denied intentionally infringing plaintiff's mark. He also denied intentionally trying to thwart the litigation by transferring the mark. This Court believes that further discovery is necessary to reveal the extent to which, if at all, defendant Huang's actions were willful. Because defendant Huang has not been deposed, there remain issues of material fact, and summary judgment on this issue is premature. Plaintiff's motion for attorneys' fees is denied without prejudice to renew. Plaintiff's motion for costs is granted to the extent this Court has granted summary judgment on the merits of the cause.

### *Conclusion*

For the foregoing reasons, plaintiff's motion for partial summary judgment on Counts One, Two and Four (trademark infringement under 15 U.S.C. Section 1114(a); unfair competition and use of a false designation of origin under 15 U.S.C. Section 1125(a) and New Jersey common law) is granted. The motion for partial summary judgment on Count Three (trademark dilution under 15 U.S.C. Section 1125(c)) is denied. Plaintiff's motion for attorneys' fees is denied without prejudice; plaintiff's motion for costs is granted with respect to Counts One, Two and Four and is denied with respect to Count Three.

### ORDER

On the motion of plaintiff TradeMedia Holdings Limited ("Trade Media") for partial summary judgment against defendants Shuo Cai Huang ("Huang") and Huang & Associates ("H & A") and for costs and attorneys' fees under Section 35(a) of the Lanham Act, and after consideration of the submissions by the parties, their oral argument, and for the reasons stated in the accompanying opinion:

It is on this __ day of November, 2000

ORDERED that plaintiff's motion for summary judgment on Counts One, Two and Four is GRANTED; it is further

ORDERED that plaintiff's motion for summary judgment on Count Three is DENIED without prejudice; it is further

ORDERED that plaintiff's motion for costs is GRANTED with regard to Counts One, Two and Four and is DENIED without prejudice with regard to Count Three; and it is further

ORDERED that plaintiff's motion for attorneys' fees is DENIED without prejudice.