genR8TNext v. LV Institute, et al.     05-CV-129-SM  05/05/05
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


genR8TNext, LLC,
Plaintiff

       v.                                    Civil No.  05-cv-129-SM
                                             Opinion No. 2005 DNH 077
Las Vegas Institute for
Advanced Dental Studies,
Inc., International Academy
of Comprehensive Aesthetics,
LLC, and William Dickerson,
Defendants


## O R D E R


     Plaintiff genR8TNext, LLC brings suit against defendant Las Vegas Institute for Advanced Dental Studies, Inc., International Academy of Comprehensive Aesthetics, LLC, and William Dickerson, seeking redress for false designation of origin under 15 U.S.C. § 1125(a) and violations of the New Hampshire Consumer Protection Act, N.H. REV. STAT. ANN. § 358-A, claiming that defendant's name "International Academy of Comprehensive Aesthetics" is confusingly similar to plaintiff's "Academy of Comprehensive Esthetics."

Plaintiff moves this court to issue an <u>ex parte</u> temporary restraining order ("TRO") pursuant to FED. R. CIV. P. 65(b), enjoining defendant from using its "International Academy of Comprehensive Aesthetics" name in marketing its services. For the reasons set forth below, plaintiff's motion is denied.

**STANDARD OF REVIEW**

"Traditionally, the test for a [temporary restraining order] has four factors: 1) a likelihood of success on the merits, 2) irreparable harm to the plaintiff should preliminary relief not be granted, 3) whether the harm to the defendant from granting preliminary relief exceeds the harm to the plaintiff from denying it, and 4) the effect of the preliminary injunction on the public interest." <u>Rio Grande Cmty. Health Ctr., Inc. v. Rullan</u>, 397 F.3d 56, 75 (citing <u>Matrix Group, Ltd. v. Rawlings Sporting Goods Co.</u>, 378 F.3d 29, 33 (1st Cir. 2004).

**BACKGROUND**

The facts, taken from the pleadings and accepted, for these purposes, as true, are as follows. In or around April 2003, plaintiff established the Academy of Comprehensive Esthetics,

2

which is, essentially, a professional organization that provides education and credentialing services to dental professionals practicing in the specific area of cosmetic (or aesthetic or esthetic) dentistry. In or about February 2005, Defendant Dickerson, who had been scheduled to deliver a keynote address at one of plaintiff's events, launched an organization called the International Academy of Comprehensive Aesthetics. Like plaintiff's organization, defendant offers professional education services and seminars, and markets those services through the same or substantially similar channels as the plaintiff. Although neither name is a federally registered trademark, plaintiff filed an application for registration with the United States Patent & Trademark Office on April 18, 2005.

Because attempts at amicably resolving the issue ultimately failed, plaintiff brought this suit alleging false designation of origin under 15 U.S.C. § 1125(a) and violations of the New Hampshire Consumer Protection Act under N.H. R.S.A. 358-A.

**DISCUSSION**

Plaintiff moves for a temporary restraining order arguing that it will suffer irreparable harm if defendants are permitted to go forward with a planned advertising campaign. But while plaintiff has noted the potential for irreparable harm should a temporary restraining order fail to issue, it has failed to demonstrate that it is likely to succeed on the merits.

As plaintiff notes in its complaint and its Motion for a Temporary Restraining Order and a Preliminary Injunction, the threshold inquiry in a trademark infringement case is whether the alleged mark is, in fact, a protectible trademark. See, e.g., Boston Beer Co. v. Slesar Bros. Brewing Co., 9 F.3d 175, 180 (1st Cir 1993).

"A court's inquiry into whether a term merits trademark protection starts with the classification of that term along the 'spectrum of distinctiveness.'" Id. At one end of the spectrum lie generic terms, that is, "terms that have passed into common usage to identify a product." Id. Such terms are unprotectible as trademarks. Id. (citing Two Pesos v. Taco Cabana, 505 U.S.

763 (1992); <u>Miller Brewing Co. v. Falstaff Brewing Co.</u>, 655 F.2d 5 (1st Cir. 1981)).  At the other end of the spectrum lie suggestive, arbitrary, and fanciful marks, which are considered "inherently descriptive" and thus entitled to trademark protection.  "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of the goods.  <u>Equine Techs., Inc. v. Equitechnology, Inc.</u> 68 F.3d 542, 544 (1st Cir. 1995) (citations omitted).  "In the middle [of the spectrum] there are so-called descriptive terms . . . which can be protected, but only if [they] have acquired 'secondary meaning' by which consumers associate it with a particular producer or source."

"Secondary meaning 'refers to a word's or sign's, ability to tell the public that the word or sign serves a special trademark function, namely, that it denotes a product or service.'" <u>Id.</u> (quoting <u>DeCosta v. Viacom Int'l, Inc.</u>, 981 F.2d 602, 606 (1st Cir. 1992)).  "Insofar as the public takes the word, or sign, to refer to a product or service with a particular source . . . the word, or sign, has 'secondary meaning.'" <u>DeCosta</u>, 981 F.2d at 606.

"In examining whether a plaintiff's advertising is enough to establish secondary meaning, we look at the advertising's 'amount, nature and geographical scope' with an eye towards how likely the advertising is to expose a large number of the relevant consuming public to the use of the symbol as a trademark or trade name." Japan Telecom, Inc. v. Japan Telecom Am., Inc., 287 F.3d 866, 875 (9th Cir. 2002) (quoting Am. Scientific Chem., Inc. v. Am. Hosp. Supply Corp., 690 F.2d 791, 793 (1982)). Put differently, [t]o take a descriptive term out of the public domain, a plaintiff must demonstrate that the relevant buying public accords it secondary meaning." Id.

Here, plaintiff first asserts that its mark is suggestive, however it offers little evidence to suggest that a relevant buyer must use "imagination, thought and perception" Equine Techs., 68 F.3d at 544, to determine the nature of the services offered by the plaintiff. To the contrary, it appears that the words "esthetic" and "aesthetic" (actually variants of the same word) when used in the field of dentistry, are widely known as referring to cosmetic dentistry.[1] Absent any required

_____

[1] A casual internet search for "esthetic," for example, yields as the first result, the American Academy of Esthetic

6

"imagination, thought and perception," id., the name is not likely to be found suggestive, but, instead, merely descriptive.

The inquiry must then turn to whether plaintiff is likely to establish that its name has acquired secondary meaning within the field of dentistry. Based on the very limited record before the court at this stage, it cannot be said that plaintiff is likely to prove that the name is understood by the relevant consuming public – here, dental professionals - "to refer to a product or service with a particular source" (it might, in fact, be taken to denote the American Academy of Esthetic Dentistry as the source). Plaintiff has operated under its name only since April 2003, placed only what appears to be the same print advertisement in several trade publications, and has engaged in several e-mail marketing campaigns. Given the relatively limited length of time the name has been used by plaintiff, the relatively limited marketing exposure it has received, and the seemingly wide prior

Dentistry ("AAED"). This organization appears to be yet another organization, not a party to the present suit, that provides similar services as plaintiff and defendant and clearly uses a similar name by which to market said services. See, http://www.estheticacademy.org. Moreover, the AAED appears to have been in existence since 1975, considerably longer than plaintiff's organization. See, http://www.estheticacademy.org/about/pastpresident.cfm.

7

use of the terms "academy," "aesthetic," and "esthetic" in connection with education and credentialing within the cosmetic dentistry field, plaintiff is unlikely, at least on this record, to demonstrate that its name has acquired sufficient secondary meaning to warrant protection as a trademark.

Because the record does not, at this point, demonstrate that plaintiff is likely to succeed in proving that its name, the "Academy of Comprehensive Esthetics," is a protectible trademark, a discussion of the likelihood of confusion is unnecessary.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for a temporary restraining order against defendants is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 5, 2005

cc:  Jennifer A. Eber, Esq.
     Kenneth J. Barnes, Esq.
     Russell F. Hilliard, Esq.

8